# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **JAMES EVERARD**, *et al.* | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **V.** | § | **NO. 6:24-CV-00342** |
| | § | |
| **CITY OF KILLEEN,** *et al.* | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COME** Defendant the City of Killeen and (in their official capacity only) Defendants Debbie Nash-King, Nina Cobb, Ken Wilkerson, Kent Cagle, and Alex Gearhart, and make and file this, their Motion Under Rule 12(b)(6) to Dismiss, and in support would show as follows:

## I.    SUMMARY OF THE MOTION

Plaintiffs—James Everard, Anca Neagu, Michael Fornino, Mellisa Brown, and Camron Cochran—filed this lawsuit alleging that their rights to be present at and speak at City of Killeen City Council meetings and other gatherings have been violated. Plaintiffs have named the City of Killeen and current and former City officials—Debbie Nash-King, Nina Cobb, Ken Wilkerson, Kent Cagle, and Alex Gearhart—as defendants. The officials are named in their official capacity only, and thus this case is functionally against the City only. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Plaintiffs allege various incidents at City Council meetings and other meetings or gatherings in which they claim that their rights were violated. But a city council meeting is not a wide-open public forum, and viewpoint neutral limitations, such as for decorum, to limit comments to agenda items, and to limit the time of comments, are appropriate. Plaintiffs have not alleged facts to show that their First Amendment rights were violated with regard to City Council meetings, or in any other way by the City or by the individual Defendants. And Plaintiffs have not alleged any basis under *Monell* to hold the City itself liable for any alleged violations of their rights. Plaintiffs have not alleged any relevant policy, custom or practice, promulgated through deliberate indifference, caused any violation of their rights.

Accordingly, Plaintiffs' case and claims should be dismissed.

## II.     AUTHORITIES AND ANALYSIS

## A.     STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under *Federal Rule of Civil Procedure* 12(b)(6), a federal court is authorized to dismiss a complaint that fails "to state a claim upon which relief can be granted." A court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1050 (5th Cir. 1982). A Court need not, however, "accept as true a legal conclusion couched as factual allegation" nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Naked "the-defendant-unlawfully-harmed-me accusations," devoid of factual enhancement, are insufficient to survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 557).

Rather, the plaintiff must plead specific facts to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to"

demonstrate that Plaintiff has a "claim to relief that is **plausible on its face.**" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Supreme Court has made clear this plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, . . . ." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

## B.     PLAINTIFFS' CASE SHOULD BE DISMISSED FOR FAILURE TO STATE A PLAUSIBLE CLAIM FOR RELIEF

### 1.     *PLAINTIFFS HAVE NO PLAUSIBLE FIRST AMENDMENT PRIOR RESTRAINT CLAIM*

A "prior restraint" is generally a restraint of speech or expressive conduct that forbids the communication in advance of the communication being made. *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original)). The vast majority of Plaintiffs' complaints relate to City officials allegedly enforcing rules for the conduct of council meetings, such as limiting comments to agenda items, limiting comments to time allotted, and refraining from personal attacks on City officials.

City council meetings are not wide-open public forums meant to accommodate unlimited public speech, they are for performance of government functions and thus there is a "significant governmental interest in conducting orderly, efficient meetings . . . ." *Rowe v. City of Cocoa, Florida*, 358 F.3d 800, 803 (11th Cir. 2004). At a limited or designated public forum such as a city council meeting, even content-based restrictions are allowed so long as they are viewpoint neutral

and are reasonably designed to confine the forum to the limited and legitimate purposes for which it was created. *See Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 280 (3rd Cir. 2004). Rules for citizen comments at a city council meeting, such time limitations, requiring that comments be relevant to agenda items, that comments not be repetitious, and that the speaker not be disruptive, do not violate the First Amendment. *White v. Norwalk*, 900 F.2d 1421, 1425-26 (9th Cir. 1989). Such rules common to city council meetings are not impermissible prior restraints. *See Shero v. City of Grove*, No: 05-CV-0137-CVE-PJC, 2006 U.S. Dist. LEXIS 80462, at *21-25 (N.D. Ok. 2006). For example, Plaintiffs' only allegation against Defendant Cobb is that she allegedly read the City's Rules of Decorum at council meetings. Given that rules for the conduct of a city council meeting are permissible, simply reading them is no First Amendment violation.

Plaintiffs allege that the Rules of Decorum prohibit criticism of City officials and impermissibly prohibit signs and placards. The City's "Governing Standards and Expectations"[1] that actually govern the conduct of council meetings accompany this response and, as the Court can see, they do not contain any impermissible viewpoint or content restrictions. Plaintiffs complain that the Standards and Expectations have been enforced against them when they have tried to criticize the mayor, the council, or city officials. A city council meeting is a limited public forum. *See Rowe*, 358 F.3d at 803; *see also Wenthold v. City of Farmers Branch*, No. 3:11-CV-0748-B, 2012 U.S. Dist. LEXIS 18452, at *25-26 (N.D. Tex. 2012). As such, the City does not have to allow persons to engage in every type of speech. *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th Cir. 2010) (citing *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 121 (2001)). In limited public forums, the government may impose reasonable, viewpoint-neutral

---

[1] See Governing Standards and Expectations, Exhibit 1. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

restrictions on speech to preserve "the civility and decorum" necessary to further the purpose of the meeting. *Ream v. City of Heath*, No. 14-4338, 2015 U.S. Dist. LEXIS 93153, 2015 WL 4393307, at *3 (N.D. Tex. July 16, 2015) (quoting *Wenthold*, 2012 U.S. Dist. LEXIS 18452, at *24)); *see also Eichenlaub*, 385 F.3d at 281 (prohibiting truculent speech at city council meeting was reasonable and appropriate under First Amendment).

Consistent with this authority and the First Amendment, the governing body may restrict speakers to the subject at hand. *Wenthold,* 2012 U.S. Dist. LEXIS 18452, 2012 WL 467325, at *8 (citing *Steinburg v. Chesterfield County Plan. Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008)). Plaintiffs appear to contend that under the First Amendment, a city council meeting is a free for all, allowing them to generally criticize the City and its personnel. Many of Plaintiffs' complaints relate to claims that they were called out for engaging in personal attacks or critical remarks and they allege that the Standards and Expectations are being enforced in a way to insulate the Mayor and Council from criticism. However, in the limited public forum of a city council meeting, Plaintiffs are not entitled to engage in generalized criticism of the City or its officials. *See Rowe v. City of Cocoa*, 358 F.3d 800, 803 (11th Cir. 2004) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand."). Rather, speech may permissibly be limited to agenda items. So, for example, Plaintiffs complain that Defendant Boyd (and this is their only allegation about Boyd) pointed out a message—"Vote Them Out"—written on the back of a clipboard being held by Plaintiff Cochran. But to the extent that Plaintiffs' would claim that the message on the clipboard is speech, the City is authorized to limit that or any other speech at a council meeting to items on the agenda. Plaintiffs do not allege that the election for any council member or any referendum to remove a council member was on the agenda.

Plaintiff Fornino alleges that he was told not to engage in personal attacks at the council's November 1, 2022 meeting and to not be disrespectful at the December 6, 2022. To advise a speaker to not engage in personal attacks and to be respectful is consistent with the City's authority to maintain civility and decorum at what is unquestionably a meeting for the conduct of government business and to stick with subjects at hand. That is particularly true under the circumstances. As Plaintiffs describe in their complaint, the agenda item at issue was a City ordinance on marijuana, which would have limited or restricted enforcement by City of Killeen police officers for relatively low-level possession offenses. Fornino, to a City Council that included multiple African American members, likened the ordinance to a repeal of the 13th, 14th and 15th Amendments.

Plaintiffs allege that at the August 15, 2023, council meeting an agenda item was to increase revenue and expense accounts in multiple funds. That is, the agenda item was not for discussion of the City's budget generally or of the City's past financial management outside of the specified funds. Plaintiffs complain that they wanted to make comments on this item, but they admit in their pleadings that they wanted to make comments about the City's alleged waste of money generally, and not about the merit of increasing revenue or expense for the specific funds at issue.

The Standards and Expectations are not impermissibly vague either. Plaintiffs complain that the Rules do not define "sign" or "placard", but a law is unconstitutionally vague only when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Cramp v. Bd. of Pub. Instruction of Orange County, Fla*., 368 U.S. 278, 287 (1961). People of common intelligence understand what the words "sign" and "placard" mean.

Further, for the vast majority of the incidents addressed in their complaint Plaintiffs do not allege any facts to even suggest that they were prevented from addressing the City's Council or from delivering the basic substance of any comments that they wished to make that were appropriate to a city council meeting. To the contrary, in almost every incident described in Plaintiffs' complaint the Plaintiff involved in the incident was able to speak to the Council. For example, Plaintiff Fornino alleges that on October 18, 2022, he told the City's Councilmembers to look at him while he was talking and that in response then Mayor, Defendant Nash-King, interrupted him. Fornino identifies another incident, on November 1, 2022, in which Nash-King allegedly interrupted him to remind him of his four-minute time limit and an incident on April 18, 2023, in which Nash-King allegedly laughed during his comments. Other Plaintiffs base portions of their claims on being interrupted. The First Amendment creates a right to speak and to petition the government, not to any particular level of attentiveness or receptiveness by government officials, and merely being interrupted is not a restraint of speech. Plaintiffs allege that Defendant Boyd (and again this is Plaintiffs' only allegation as to Boyd) pointed out a sign and then merely stated "I'm not sure if it's a distraction or not", which would hardly be a prior restraint against the sign, or a restriction at all for that matter.

Plaintiffs allege that councilmember Wilkerson told Plaintiff Fornino to stop talking during the April 18, 2023, council meeting, but in their pleadings they admit that was with regard to Fornino's chastising Mayor Nash-King for laughing, not with regard to any comments Fornino was making relevant to an agenda item. Plaintiffs allege that Wilkerson then approached Fornino in a confrontational way, but they do not allege anything to show that stopped Fornino from making comments relevant to an agenda item. Plaintiffs' only allegation about Defendant Gearhart, an Assistant Chief of Police, is that he was present when Wilkerson walked towards

Fornino in a confrontational way and did not intervene. Plaintiffs do not allege or explain how this is a First Amendment violation or the violation of any right for that matter. *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001) (citing *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 201 (1989) (no liability for failure to provide police protection)).

Plaintiff Neagu alleges to have timely signed up to make comments during the public comment period, but to have been denied the ability to do so by Defendant Cagle. Speech may be limited to specified agenda items and Neagu does not allege facts to show she was denied the right to make comments relevant to an agenda item and otherwise appropriate to the city council meeting at issue. *Wenthold,* 2012 U.S. Dist. LEXIS 18452, 2012 WL 467325, at *8. Additionally, limiting public comments at a city council meeting such that they may only be made by residents of the city is reasonable and permitted under the First Amendment. *See Rowe v. City of Cocoa*, 358 F.3d 800, 803-04 (11th Cir. 2004) (citing *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 830 (1995) and *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Neagu does not allege that she is a resident of the City of Killeen.

Plaintiff Brown alleges that she requested a one-minute extension of her public comment period but was denied, even though another speaker was given an extension. But Brown does not allege facts to show she would have made comments relevant to an agenda item, or that the denial of her requested extension was not based on legitimate considerations.

Plaintiff Everard alleges that the City has a Facebook page and that the page is public and has a comment section. Everard alleges that the City blocked him from commenting on the Facebook page because it disagrees with his "public criticisms or political stance." Plaintiff, however, fails to allege any factual details to show he has a plausible prior restraint claim.

The Supreme Court has recognized three categories of public fora: "traditional public forums," "designated public forums," and "limited public forums." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 (2010). The First Amendment analysis that applies depend on the nature of the forum. *See id.* To determine the nature of the forum, a court "must examine the terms on which the forum operates . . . ." *" Hopper v. City of Pasco,* 241 F.3d 1067, 1075 (9th Cir. 2001). Government intent is critical in this determination, which in turn is evaluated by looking at the government's policy and practice. *Id.* A government social media page the use of which is subject to guidelines on what can be said, or that limits comments to designated topics, is a nonpublic forum and viewpoint neutral restrictions can be imposed in such a forum. *E.g., Krasno v. Mnookin*, 638 F. Supp. 3d 954, 969-77 (W.D. Wis. 2022). Plaintiff does not allege any details about the extent to which it is public, whether the City has adopted any standards or guidelines for comment on the Facebook page, or whether the City designates topics for discussion on the page. And without details to show the nature of the forum created by the City's Facebook page, Plaintiff has not alleged a First Amendment claim, because keeping Plaintiff on topic—as opposed to allowing wide-open commentary criticizing the City or its officials or generally expressing a political stance—would be allowed in a nonpublic forum.

Accordingly, Plaintiffs have not alleged facts to show that their First Amendment rights were violated through an impermissible prior restraint.

### 2.     *Plaintiffs Have No Plausible First Amendment Retaliation Claim*

For largely the same reasons as stated above, Plaintiffs have not alleged a plausible First Amendment retaliation claim. To prove First Amendment retaliation, a plaintiff must prove, (1) the plaintiff was engaged in constitutionally protected activity, (2) the officer's actions caused him

to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officer's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

As set out above, a city council meeting is a limited public forum and a person does not have a right to speak at such a forum on any topic and in any manner he or she chooses. Plaintiffs have not shown that they engaged in protected activity because, as discussed above, they have not shown that they engaged or intended to engage in speech that was relevant to agenda items and appropriate to a council meeting.

Plaintiffs have not alleged facts to show that they experienced an "injury that would chill a person of ordinary firmness from continuing to engage" in speech. *Keenan*, 290 F.3d at 258. The vast majority of Plaintiffs' complaints are that they were interrupted, told to stick to agenda topics, or told to not be offensive. They do not allege that they experienced any sort of punitive actions related to their speech that normally qualify as retaliatory. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1290 (10th Cir. 2004) (an official action does not impermissibly suppress a citizen's right to free speech unless the governmental action "punish[es], or threaten[s] to punish, protected speech" and noting direct threats or indirect consequences, such as imprisonment, fines, injunctions or taxes as common forms of injury).

Finally, Plaintiffs do not allege facts to show that any action to restrain or punish their speech was based on their engaging in protected speech. To the contrary, Plaintiffs acknowledge in their pleadings that other speakers were allowed to speak at council meetings and to even be critical of the council or City's position on agenda items.

### 3. Plaintiffs Have No Plausible Due Process Claim

Plaintiffs allege that they have a due process right to be present at City Council meetings and that this right was violated.

First, the fundamental basis of Plaintiffs' claim is that they were entitled to engage in speech at City Council meetings. They do not argue that they should have been allowed to attend City Council meetings for the sake of attendance itself. Thus, it is the right to engage in speech that is at issue, which is protected by the First Amendment, meaning that a due process claim is not available. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims'" (quoting *Graham*, 490 U.S. at 395)).

Second, Plaintiffs cite case law in their complaint as support for the existence of this right, but that case law is inapplicable. For example, Plaintiffs cite *City of Chi. v. Morales*, 527 U.S. 41 (1998), but *Morales* dealt with an ordinance against loitering, which the City of Chicago had adopted as an anti-gang measure, and which the Court held to be unconstitutional because it did not give fair notice of what was considered illegal loitering as opposed to lawful public gathering. The law provided no standards on what unlawful loitering was and thus gave law enforcement absolute discretion to functionally prohibit gathering in public. Other cases cited by Plaintiffs have nothing to do with a limited public forum such as a City Council meeting or to a city's use of reasonable restrictions at such a forum. *See Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011) (City unlawfully enforced trespass ordinance to keep alleged homeless out of city parks, even criminalizing presence that would be common as use by members of the public, and prohibiting use by homeless of all parks generally. The law included no adequate standards and no

process for rescission of a violation); *Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010) (total ban from all city property was overbroad when imposed on man for allegedly staring at kids at City pool, with no conviction of any crime and no process making any determination that he engaged in wrongdoing).

Third, Plaintiffs do not allege that they were excluded from City Council meetings. Plaintiffs allege that Plaintiff Brown was removed from one council meeting, but Plaintiffs do not allege facts to show how this affected Plaintiff Brown's right to speak on an agenda item. No other Plaintiff appears to have been removed or otherwise affected in any way in attending City Council meetings or other similar gatherings.

### 4. Plaintiffs Have No Plausible Declaratory Judgment Act Claim

The purpose of the Federal Declaratory Judgments Act "is to settle 'actual controversies'" before they ripen into full violations of the law. *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949). A district court has discretion in deciding whether to entertain a declaratory judgment action. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994).

As set out above, Plaintiffs allege that violations have already occurred, not that they will occur unless declaratory relief is entered. So, declaratory relief is not proper. Plaintiffs do not allege facts to suggest that there are ongoing or likely future violations that necessitate declaratory relief to prevent further violations. *Green v. Mansour*, 474 U.S. 64, 71-73 (1985) (if there is no claimed continuing violation of the law, declaratory relief is not proper). Plaintiffs' claim for declaratory relief is simply a restatement of their substantive claims that their rights have been violated, which is not a proper basis for declaratory relief. *Flanagan v. Chesapeake Exp., LLC*, No. 3:15-CV-0222, 2015 U.S. Dist. LEXIS 151521, 2015 WL 6736648, at *4 (N.D. Tex. Nov. 4, 2015) (collecting cases). Further, as set out above, there has been no violation of Plaintiffs' rights

and, therefore, they are not entitled to relief on the underlying controversy and thus are not entitled to declaratory relief. *E.g., Traynor v. Chase Home Fin., L.L.C.*, No. 3:11-cv-800-K, 2013 U.S. Dist. LEXIS 27004, at *16-17 (N.D. Tex. 2013) (noting that if there would be no legal recourse for the parties on the underlying legal dispute, declaratory relief is not proper).

Consequently, Plaintiffs have no plausible claim for declaratory relief.

### 5. *Plaintiffs Have Not Pled a Plausible Basis for Monell Liability*

Plaintiffs have named the City of Killeen and current and former City officials—Debbie Nash-King, Nina Cobb, Ken Wilkerson, Kent Cagle, and Alex Gearhart—as defendants. The officials are named in their official capacity only, and thus this case is functionally against the City only. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A government entity "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1988) ("Respondeat superior or vicarious liability will not attach under § 1983."). Rather, a municipality can be held liable under Section 1983 "when, and only when" (1) its official policies, or a custom or practice, (2) implemented by a final policy maker, (3) through deliberate difference, (4) is the moving force (5) behind the violation of a plaintiff's rights. *City of Canton*, 489 U.S. at 389; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986); *see also Ristow v. Hansen,* 719 Fed. Appx. 359. 366-67 (5th Cir. 2018) (applying *Monell* to Section 1983 due process claim related to employment discipline).

#### a.    Plaintiffs have not pled facts to identify an official policy

An "official policy" is an ordinance, regulation or some similar statement of official municipal policy promulgated by the city's final policymaker. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The only possible official policy that Plaintiffs have identified are

the "Rules of Decorum" read at council meetings. Decorum rules for City Council meetings come from the City's "Governing Standards and Expectations". The Court can see for itself in the attached copy of the Standards and Expectations that they do not include anything that on their face is unconstitutional. They do not contain any view-point based restrictions, their only content-based restriction are the sort permitted (as discussed above) to limit discussion to agenda items and to require a level of decorum and civility, and they are not impermissibly vague in any way relevant to this case. Plaintiffs have not identified any official policy relevant to Plaintiff Everard's allegedly being excluded from the City's Facebook page.

### b. Plaintiffs have not alleged a custom or practice

In the alternative to an official policy, a Section 1983 plaintiff may attempt to establish *Monell* liability on the basis of a municipal custom or practice. The Fifth Circuit has explained that a plaintiff relying on an alleged custom or practice to establish municipal liability must demonstrate a "pattern of abuses that transcends the error made in a single case,"[2] and is a pattern of "persistent, often repeated, constant violations." *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001); *see also Pineda v. City of Houston,* 291 F.3d 325, 329 (5th Cir. 2002). A pattern of prior violations sufficient to establish a custom that reflects the municipality's policy "requires similarity and specificity: '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir.2005)). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id*. (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1989)); *see*

---

[2] *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 850–51 (5th Cir.2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001)).

*also Oporto v. City of El Paso*, EP-10-CV-110-KC, 2012 U.S. Dist. LEXIS 82493, at \*13-15 (W.D. Tex. 2012) (noting that to show custom, a plaintiff must show a sufficient number, based on the size of the police force, of similar incidents).

Plaintiffs' pleadings allege a number of incidents at City Council meetings and other meetings and gatherings, but for the reasons described above, those incidents are not violations of Plaintiffs' rights. They certainly are not a pattern of similar violations. Plaintiffs themselves base their claims on various theories—some incidents involve being told to stick to the agenda, some involve being told not to criticize city personnel, some involve alleged signage, some involve the right to be present at the Council meetings. And Plaintiffs have not alleged any prior or series of incidents to show a custom or practice relevant to Plaintiff Everard's allegedly being excluded from the Facebook page. Thus, Plaintiffs have not pled a sufficient number of similar and temporally relevant violations to show a custom or practice that would support a Section 1983 claim.

### c. Plaintiffs have not alleged involvement of a final policymaker or deliberate indifference

A final or ultimate policymaker who can promulgate policy that can be the basis of *Monell* liability is an employee of the governmental entity that has not only the power to direct actions, but also the "final authority to establish [city] policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). To be a final policymaker, the official's authority must be such that he or she "decide[s] the goals for a particular city function and devise[s] the means of achieving those goals." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). Most of Plaintiffs' complaints appear to be directed at Mayor Nash-King. The Mayor of the City of Killeen is not its policymaker. To the contrary, per the City's Charter, the City of Killen has a council-manager government and "all powers of the city shall be vested in an elective council, hereinafter referred to as 'the

council,'" See City Charter Art. I and Art. III, Sec. 23, 27.[3] Article III of the City's charter states that the mayor is the ceremonial head of the government but has no administrative power, including no vote unless there is a tie. See City Charter Art. III, Sec. 25. Substantially similar language has been held to establish a city's council as the city's final policymaker. *See Arevalo v. City of Farmers Branch, Texas*, No. 3:16-CV-1540-D, 2017 U.S. Dist. LEXIS 191030, at *17 (N.D. Tex. 2017) (citing, *inter alia, Pinedo v. City of Dallas*, No. 3:14-CV-0958-D, 2015 U.S. Dist. LEXIS 5272, at *12-13 (N.D. Tex. 2015) (discussing Dallas City Charter)).

Plaintiffs allege that Councilman Wilkerson made some comments and acted confrontationally towards Plaintiff Fornino, but the act of a single City councilperson would not be an act of policymaking. See City Charter Art. I (Killeen is a home-rule city with a "council-manager government"), *see Mendoza v. Chi. Park Dist*., No. 00 C 2825, 2002 U.S. Dist. LEXIS 18384, at *10 (N.D. Ill. 2002) (collecting authorities, not every action by a policymaker is an act of policymaking). Plaintiffs allege that Defendant Cobb violated their rights, but the only allegation against Cobb is that she read the rules of decorum, not that she joined along with other councilmembers to form a majority to implement a policy or engage in policymaking activity that violated Plaintiffs' rights.

Plaintiffs allege that the City blocked Plaintiff Everard from the City's Facebook page. But they do not allege any facts to show this was done by or at the direction of a City policymaker.

Plaintiffs have not alleged facts to support deliberate indifference either. For liability to be imposed under *Monell*, the violation must be attributable to the municipality itself and due to deliberate indifference. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty.*

---

[3] https://library.municode.com/tx/killeen/codes/code_of_ordinances?nodeId=PTICH

*Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). Deliberate indifference implies that the governmental entity itself had actual knowledge of facts showing that a risk of serious harm existed, drew that inference, and yet disregarded that risk. *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (internal quotation marks and citations omitted); *see also Limon v. City of Balcones Heights*, 485 F. Supp. 2d 751, 754 (W.D. Tex. 2007) (plaintiff "must offer evidence of not simply a decision, but a deliberate or conscious decision by the City itself to endanger constitutional rights") (citing *Snyder v. Trepagnier*, 142 F.3d 791, 796, 799 (5th Cir. 1998)); *Brown*, 520 U.S. at 400 (deliberate action must be attributable to the municipality itself); *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (discussing need for governmental body to have knowledge of violations). Proof of deliberate indifference normally requires a plaintiff to show a pattern of violations and that the resulting policy or custom is "obvious and obviously likely to result in a constitutional violation." *Estate of Davis*, 406 F.3d at 381 (citations omitted).

Again, Plaintiff has not alleged violations, let alone a pattern of violations that would put the City itself on notice that any policy, custom, or practice it had would cause violations such as those at issue. The vast majority of Plaintiffs' complaints are that they were told to stick to time limitations, told to stay on agenda, told not to engage in personal criticisms, or similar issues. A city and its officials are supposed to have a great deal of discretion in regulating and moderating city council meetings for decorum and time and topic limitations. *Wenthold*, 2012 U.S. Dist. LEXIS 18452, at *28; *see also Eichenlaub*, 385 F.3d at 281 (prohibiting truculent speech at city council meeting was reasonable and appropriate under First Amendment). If the Facebook page is a nonpublic forum, that same sort of discretion would apply to that page as well. *Krasno*, 638 F. Supp. 3d at 975-77. The fact that the City officials, such as the Mayor (who is not a policymaker), a councilmember (who alone is a not a policymaker), or other unknown City officials might not

have (although this is wholly denied) exercised that discretion perfectly at all times does not rise to the level of showing that the City itself knew that First Amendment violations such as what Plaintiffs' allege were likely, but did not care. *City of Canton*, 489 U.S. at 388 (deliberate indifference is more than mere negligence or even gross negligence).

### d. Plaintiffs have not alleged facts to support causation

A plaintiff attempting to establish municipal liability under Section 1983 must also show that a relevant policy, custom, or practice was the "moving force" behind the alleged violation at issue. *Brown*, 520 U.S. at 404. The requirement that a policy be the moving force behind a violation is "rigorous", imposing a "high threshold." *Piotrowski*, 237 F.3d at 580 (quoting *Monell*, 436 U.S. at 694); *Snyder*, 142 F.3d at 796. Mere "but for" causation or a showing that correcting the allegedly deficient policy, custom or practice would have prevented the claimed constitutional injury is not sufficient to meet the plaintiff's burden. *Fraire*, 957 F.2d at 1281 (citing *City of Canton*, 489 U.S. at 388-89); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005). A plaintiff is required to "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404; *see also Fraire*, 957 F.2d at 1281 ("a direct causal connection must exist between the policy and the alleged constitutional deprivation").

Plaintiffs have not alleged facts to support causation under these principles. Again, the real substance of almost all of Plaintiffs' complaints are that they were told to stick to time limitations, told to stay on agenda, told not to engage in personal criticisms, or similar issues. Nothing suggests that any City policy, custom or practice caused a violation of their rights in relation to these issues. Instead, Plaintiffs' claims are really that City officials used their authority and discretion in specific situations to stifle Plaintiffs' speech. City officials are supposed to have a great deal of discretion

in regulating and moderating city council meetings for decorum and time and topic limitations, *Wenthold*, 2012 U.S. Dist. LEXIS 18452, at *28, as well as commentary on a nonpublic forum social medial page. *Krasno*, 638 F. Supp. 3d at 975-77. So there is nothing improper about the Mayor or council having a degree of discretion and Plaintiffs have not alleged facts to show that Plaintiff Everard was blocked or restricted from the Facebook page in violation of applicable First Amendment standards, let alone that any such blocking or restriction was caused by City policy. If there was a misuse of authority or discretion under the City's view-point neutral and otherwise appropriate policy (and there was not) to the point of a civil rights violation, that would not be because of City policy, it would be despite it.

### III.     CONCLUSION

In summary, Plaintiffs have failed to state a plausible claim on which relief can be granted. Plaintiffs have not pled facts to plausibly show that any of their First Amendment or Due Process rights have been violated, that declaratory relief is proper in this case, or to support *Monell* liability against the City itself.

Respectfully submitted,

*/s/ Roy L. Barrett*
Roy L. Barrett
State Bar No. 01814000
barrett@namanhowell.com
Joe Rivera
State Bar No. 24065981
jirvera@namanhowell.com
NAMAN, HOWELL, SMITH & LEE, PLLC
400 Austin Avenue, Suite 800
Waco, Texas  76701
(254) 755-4100
FAX (254) 754-6331

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on the 22nd day of August 2024, on counsel for Plaintiffs both through the CM/ECF system and by email.


*/s/ Roy L. Barrett*
Roy L. Barrett