

# City of Killeen

# GOVERNING STANDARDS AND EXPECTATIONS

**ADOPTED VIA RESOLUTION 18-052R**

**6/27/2018**

**LAST AMENDED VIA RESOLUTION 23-102R**

**6/27/2023**

EXHIBIT 1

# <u>PREFACE</u>

The following is a single source reference document enumerating the Killeen City Council's Protocols, Rules of Order and Procedure, and Policies.  The protocols and guidelines included in this reference document have been formally adopted by the City of Killeen City Council.

The Killeen City Council believes that effective municipal governance requires that individual Councilmembers adhere to a general set of principles when dealing with each other and the public. Furthermore, the City Council desires to conduct its meetings in a manner that is respectful, effective and efficient, while fostering an environment that is fair, open and responsive to the needs of the community.

As an elected official and representative of the City of Killeen, it is expected that you will:

❖ Respect the opinions of fellow Councilmembers, be well-informed on issues and participate in the deliberations of the Council.
❖ Accept responsibility to attend all Council meetings and work sessions.
❖ Provide appropriate notification to the Mayor and City Manager of an absence as soon as possible prior to the meeting time.
❖ Not disclose information which is confidential and, when asked by the public for information that is still confidential, will state that the information is confidential.
❖ Make every attempt to resolve any conflict with a fellow Councilmember prior to bringing the conflict to the attention of the Council.
❖ Assist in preserving order and decorum.
❖ Neither by conversation or otherwise delay or interrupt the proceeding or refuse to obey the orders of the Mayor or presiding officer or the rules of the City Council.
❖ Expect to be informed of all issues and data in a timely manner.

COUNCIL MEETING EXPECTATIONS:

Each Councilmember will:

❖ Endeavor to make the citizens comfortable and part of the process at the meetings.
❖ Make visitors comfortable by being courteous and respecting their opinions.
❖ Do their best to communicate in clear, concise and audible language and written communications.
❖ Strive to maintain a tone of voice that is courteous and sincere.
❖ Honor and act on all requests for action and/or information in a timely and courteous manner.
❖ Discuss issues, but not personalities, with non-Councilmembers. After an issue has been voted on, a councilmember will speak in a manner that does not undermine the integrity or motives of the Council.

COUNCIL FINAL AUTHORITY ON GUIDELINES:  All questions regarding these guidelines shall be resolved by a majority vote of the City Council, present and voting.

EXHIBIT 1

# GOVERNING STANDARDS AND EXPECTATIONS ...................................................................................1

**Division 1. Meetings** ..........................................................................................................................1
Sec. 1-10.    Authority ................................................................................................................................1
Sec. 1-20.    City Council Agenda ..............................................................................................................1
Sec. 1-30.    Types of Meetings ................................................................................................................2
Sec. 1-40.    Quorum .................................................................................................................................2
Sec. 1-50.    Order of Business .................................................................................................................2
Sec. 1-60.    Consideration of Ordinances, Resolutions and Motions .....................................................5
Sec. 1-70.    General Procedures ..............................................................................................................5
Sec. 1-80.    Decorum ...............................................................................................................................8
Sec. 1-90.    Staff Relations ....................................................................................................................11
Sec. 1-100.  Statements by Public Officials Regarding Litigation ..........................................................12
Sec. 1-110.  Disbursement of City Council Requested Information ........................................................12

**Division 2. City Council Policies and Operating Procedures** .........................................................13
Sec. 2-10.    State and Federal Legislation and Rule-Making Proceedings ............................................13
Sec. 2-20.    City Council Travel and Business Expenses ........................................................................13
Sec. 2-30.    Council Requests for Information or Services from Staff ...................................................14
Sec. 2-40.    Process for Filling Unexpired City Council Term ...............................................................14
Sec. 2-50.    Political Signs ......................................................................................................................14
Sec. 2-60.    Use of City Facilities, Staff or Resources by the Mayor or City Councilmembers for Mayor or City
             Councilmember-Sponsored Meetings .................................................................................15
Sec. 2-70.    City Sponsorship of Non-Profit Events ...............................................................................15
Sec. 2-80.    Assistance to Community Organizations for Special Events ..............................................15

**Division 3. City Council Committees and Citizen Boards, Commissions and Committees** .................17
Sec. 3-10.    City Council Committees .....................................................................................................17
Sec. 3-20.    Citizen Boards, Commissions and Committees ..................................................................18
Sec. 3-30.    Communications on Behalf of the City by Citizen Members of Boards, Commissions and Committees ...........20

**Division 4. Council Directives and Executive Limitations** ...............................................................22
A.    Council Directives to Management ..........................................................................................22
Sec. 4-10.    Public Use of City Hall and Other City Facilities ................................................................22
Sec. 4-20.    Policy for Support of Community Events ............................................................................22
Sec. 4-30.    Compensation of City Employees .......................................................................................22
Sec. 4-40.    Restrictions on the Representation of Third-Parties by Former City Employees ("Revolving Door Policy") ........22
Sec. 4-50.    Motions of Direction to City Manager ...............................................................................22
Sec. 4-60.    Directive to Use Official City of Killeen E-mail Addresses ................................................23
Sec. 4-70.    Delegation of Authority to Determine Purchasing Method ..............................................23
Sec. 4-80.    Directive to Adopt Finance Policies and Review Annually .................................................23
Sec. 4-90.    Issuance of Correction Deeds and Deeds Without Warranty ............................................23
Sec. 4-100.  Directive to Adopt Media Policy ........................................................................................23
Sec. 4-110.  Delegation of Signature Authority .....................................................................................23
Sec. 4-120.  Directive to Develop Economic Development Policy ..........................................................23
Sec. 4-130.  Directive to Develop Street Maintenance Policy ...............................................................24
Sec. 4-140.  Directive to Develop Invocation Procedure .......................................................................24
Sec. 4-150.  Directive Regarding Zoning Notification Boundaries and Signage ....................................24
Sec. 4-160.  Delegation of Authority to Approve Certain Change Orders .............................................24
Sec. 4-170.  Delegation of Authority to Apply for Grants ....................................................................24
Sec. 4-180.  Delegation of Authority to Employ Police and Fire Over-Hires .........................................24
B.    Executive Limitations ..............................................................................................................25

<span style="color:red">EXHIBIT 1</span>

Sec. 4-210. Global Executive Constraint ......................................................................................... 25
Sec. 4-220. Treatment of Customers of City Services ...................................................................... 25
Sec. 4-230. Treatment of Staff .......................................................................................................... 25
Sec. 4-240. Financial Planning/Budgeting......................................................................................... 26
Sec. 4-250. Financial Condition and Activities .................................................................................. 26
Sec. 4-260. Asset Protection ............................................................................................................. 27
Sec. 4-270. Emergency City Manager Succession ........................................................................... 27
Sec. 4-280. Compensation and Benefits ........................................................................................... 27
Sec. 4-290. Communication and Support to the City Council ........................................................... 28

**Division 5. Communications** .............................................................................................................. **29**
Sec. 5-10. Purpose ............................................................................................................................ 29
Sec. 5-20. General Provisions ........................................................................................................... 29
Sec. 5-30. Media ................................................................................................................................ 29
Sec. 5-40. Social Media ..................................................................................................................... 30
Sec. 5-50. Email ................................................................................................................................. 30
Sec. 5-60. Other ................................................................................................................................. 30

**Division 6. Ethics** .............................................................................................................................. **32**
Sec. 6-10. Council and Appointed Board Members ........................................................................... 32
Sec. 6-20. Acceptance of Gratuities ................................................................................................. 32
Sec. 6-30. Use of City Facilities, Personnel, Equipment, etc. .......................................................... 33
Sec. 6-40. Conduct in Commercial Transactions .............................................................................. 33
Sec. 6-50. Representing Interests Contrary to Those of the City ...................................................... 33
Sec. 6-60. Conflicting Interests in Legal Proceedings ...................................................................... 33
Sec. 6-70. Disclosure of Personal Financial Interest and Abstention from Voting ........................... 33
Sec. 6-80. Communications with Applicants or Petitioners ............................................................... 33

**Division 7. Enforcement and Administration** ................................................................................... **35**
Sec. 7-10. Policy Enforcement .......................................................................................................... 35
Sec. 7-20. Annual Review and Re-adoption of These Governing Standards and Expectations......... 35
Sec. 7-30. City Manager and City Attorney Roles Regarding Protocol. ............................................ 35

**Attachments**
A. Request To Place Item On The Agenda ...................................................................................... 36
B. Support for Mayor or Councilmember-Sponsored Meeting ......................................................... 37
C. Reserved. ................................................................................................................................... 38
D. Ethics Policy Agreement ............................................................................................................ 39
E. Standards of Conduct Agreement .............................................................................................. 40
F. Amendment History ................................................................................................................... 41

EXHIBIT 1

# GOVERNING STANDARDS AND EXPECTATIONS

## DIVISION 1.  MEETINGS

### Sec. 1-10.    Authority

Pursuant to the provisions of the Charter of the City of Killeen, Texas, the City Council may enact rules of procedure for all meetings of the City Council of the City of Killeen, Texas, which shall be in effect upon their adoption by the City Council and until such times as they are amended or new rules adopted.

### Sec. 1-20.    City Council Agenda

(a)   The City Manager is responsible for creating, processing and distributing the agenda and agenda materials for City Council meetings.

(b)   The Mayor or a councilmember may direct the City Manager in writing, using the attached form (Attachment "A"), to place an item on the next available work session agenda to introduce the topic to the City Council. Items must be submitted to the City Manager no later than noon on the Monday proceeding the week of the City Council work session meeting, and must contain adequate detail of the request to allow for proper posting under the Open Meetings Act.  The City Council may discuss the item when presented, and if a majority of Council agrees that further discussion of the item is warranted, the item will be placed on a future agenda for more detailed discussion and staff work, if necessary. If Council does not agree that further discussion is warranted, the item may not be introduced again within six months unless either directed by a majority of the City Council to the City Manager during any scheduled regular or special meeting or work session, or directed by the Mayor and one Councilmember in writing to the City Manager. In all cases, at least one member of the City Council who is requesting that the item be renewed on an agenda shall have been on the prevailing side of the previous vote on the item. The Mayor or City Manager may also place an item on the agenda if they believe it is of general interest or necessary to carry out business.

(c)   A majority of the City Council, during any scheduled regular or special meeting or work session, may direct the City Manager to place an item on a future agenda.

(d)   Agenda items placed on the agenda by the Mayor or members of the City Council previously considered and whereby action was taken by the City Council may not be placed on a future agenda within six months of such action unless either directed by a majority of the City Council to the City Manager during any scheduled regular or special meeting or work session, or directed by the Mayor and one Councilmember in writing to the City Manager. In all cases, at least one member of the City Council who is requesting that the item be renewed on an agenda shall have been on the prevailing side of the previous vote on the item.

(e)   In order to provide Councilmembers ample time to review items and submit questions in advance, the agenda and all supporting documentation shall be presented to the City Council on or before the Friday before the work session at which the agenda will be discussed. Any information not available at that time shall be sent to Councilmembers as a supplement as soon as possible before the meeting. Agendas and supporting documentation for regular meetings shall be presented to the City Council on or before the Friday before the meeting.

EXHIBIT 1

### Sec. 1-30.    Types of Meetings

(a)    *Regular Meetings:* A regular meeting is one during which the City Council takes official action.  They are held on the second and fourth Tuesday of each month, unless the meeting is rescheduled or cancelled. The Mayor has the authority to establish the start time for any regular meeting.

(b)    *Work Session Meetings:* A work session is a meeting to discuss or explore matters of interest to the City, review and discuss agenda items, and/or meet with City boards, commissions or committee members, or City Staff. These meetings are informational and no formal action shall be taken unless the posted agenda indicates otherwise, although Council may provide direction to the City Manager via Motions of Direction. Staff will make presentations for agenda items at the work session.  The Mayor may allow any citizen to participate in the discussion at a work session, but only as recognized by the Mayor. The Mayor may end citizen participation in a work session in order to allow the City Council to proceed with discussion.  A work session will normally be scheduled on the first and third Tuesday of each month.  The Mayor has the authority to establish the start time for any work session meeting.

(c)    *Special Meetings:* Per City of Killeen Charter sec. 34, special meetings may be called by the Mayor or by a majority of the Council. The call for a special meeting shall be filed with the City Secretary in written form, except that announcement of a special meeting, during any regular meeting at which all members are present, shall be sufficient notice of such special meeting. The call for a special meeting shall specify the day and the hour of the special meeting and shall identify the subject or subjects to be considered.

(d)    *Emergency Meeting:* In case of emergency or urgent public necessity, as defined by State law and confirmed by the City Attorney, which shall be expressed in the notice of the meeting, an emergency meeting may be called by the Mayor or City Manager, and it shall be sufficient if the notice is posted at least two hours before the meeting is convened.

(e)    *Closed Meeting:* The City Council may meet in a closed meeting under conditions allowed by applicable law. Details discussed in closed meetings shall be considered confidential and shall not be discussed or disclosed outside the meeting.

(f)    *Recessed Meetings.* Any meeting of the City Council may be recessed to a later time provided that no recess shall be for a period longer than twenty-four hours from the time the meeting is recessed.

### Sec. 1-40.    Quorum

A quorum at any meeting of the City Council will be established by the presence of four members of Council. The Mayor shall not count as a Councilmember for the establishment of a quorum.

### Sec. 1-50.    Order of Business

Regular City Council meetings will be generally conducted in the following order, unless otherwise specified. An executive session may be held at any time during a meeting pursuant to applicable State law.

EXHIBIT 1

(a) *Agenda Format*: The Agenda shall provide for the following topics or subjects to be considered by the City Council in the following order:

1. CALL TO ORDER: This section shall note the time and place of the meeting.

2. ROLL CALL: This section shall note the attendance of the Mayor, City Councilmembers, City Manager, City Attorney, City Secretary and Sergeant at Arms.

3. INVOCATION: This section shall note the opening prayer. (See sec. 4-140 for invocation policy).

4. PLEDGE OF ALLEGIANCE: This section shall note the observance of our national pledge.

5. APPROVAL OF THE AGENDA: This section shall approve of the order and content of the agenda. The Mayor or any Councilmember may ask for the order and/or content of the agenda to be modified under this item upon consent of a majority of the Council.

6. PRESENTATIONS. This section shall provide for any items to be submitted to the Council which are: proclamations; items not requiring extensive discussion; items requesting information or items requesting future action by the Council. No item requiring action by the Council shall be placed under this section.

7. CITIZENS PETITIONS AND INFORMATION: This section allows presentations by citizens of Killeen who are not currently in, or threatening civil or criminal litigation with, the City of Killeen or any of its officers or officials, or with whom litigation is reasonably anticipated. However, citizens who are currently involved or threatening litigation against the City may still address the council on issues wholly unrelated to the subject matter of the litigation. Individuals should address their petitions and presentations to the City Council and refrain from personally addressing individual members of the Council. Councilmembers cannot discuss items presented under this agenda item or take any action other than consideration of whether to place the item on a future agenda as a discussion item, or refer to staff for research and possible future action.  Presentations may cover only one topic, must be related to City business, and shall be limited to four (4) minutes,. A timer will be placed so that the speaker and citizens can see it.  A majority vote of the City Council is required for any time extensions. Presentations must be scheduled and audio-visual materials requiring the use of equipment for presentation must be submitted through the City Manager's office by 2:00 p.m. on the Monday of the week preceding the Council meeting at which the citizen wishes to speak. Citizens may only make one presentation per meeting.

8. CITIZENS COMMENTS ON AGENDA ITEMS:  This section allows members of the public to address the Council regarding any item, other than a public hearing item, on the agenda for Council's consideration.  Each person shall sign up in advance, may speak only one time, and such address shall be limited to four (4) minutes.  A timer will be placed so that the speaker and citizens can see it.  A majority vote of the City Council is required for any time extensions.  The Mayor and Councilmembers shall have one (1) minute to respond to citizen comments with a statement or explanation without engaging in dialogue.

9. CONSENT AGENDA: This section shall provide for items that require action by the Council, but where no discussion is anticipated. By a single motion, second, and affirmative majority

EXHIBIT 1

vote, items under this section are approved without further discussion or action. Items such as, but not limited to, the approval of minutes, approval of plats, awarding of bids and permits are eligible for consideration under this section.

10.   RESOLUTIONS:  This section shall provide for all resolution action items to be considered by the Council not provided for elsewhere on the agenda.

11.   ORDINANCES: This section shall provide for all ordinance action items to be considered by the Council not provided for elsewhere on the agenda.

12.   PUBLIC HEARINGS: This section shall provide for Council consideration of any public hearings related to such hearings if action is required. Public hearings shall be conducted in the following manner:

    a.  Reading of the caption of the ordinance (if applicable)
    b.  Staff presents report.
    c.  City Councilmembers may ask Staff questions. Councilmembers shall not use this time to indicate support or opposition for the matter before the City Council.
    d.  The applicant then has the opportunity to present comments, testimony, and/or oral arguments. Only one person may represent the application during this section. (four (4) minute limit)  A timer will be placed so that the speaker and citizens can see it.
    e.  City Councilmembers may ask questions of the applicant.
    f.  The Chair opens the public hearing.
    g.  Upon opening the public hearing, and before any motion is adopted related to the merits of the issue to be heard, the Chair shall inquire if there is anyone present who desires to speak on the matter which is to be heard or to present evidence regarding the matter.
    h.  Members of the public are provided with the opportunity for comments and testimony in accordance with Section 1.50(c) of these Governing Standards and Expectations.
    i.  Mayor closes public hearing.
    j.  The applicant may be given the opportunity to respond to questions from the City Council and for closing comment or rebuttal.
    k.  The City Council deliberates and takes action as needed.
    l.  The Chair announces the final decision of the City Council as applicable.

13.   ADJOURNMENT: This section provides for the closure of the meeting.

(b)   *Agenda Deadline*: Any person desiring either to present an item for the City Councils' consideration or sign up to address the City Council during Citizens Petitions and Information shall do so in the City Manager's office not later than 2:00 p.m. on the Wednesday preceding the meeting or work session at which he/she wishes the subject to be considered.

(c)   *Public Participation*: Whenever a member of the public is recognized to address the Council on an ordinance, resolution, or public hearing item, the individual will be given four (4) minutes to make comments. A majority vote of the City Council is required for any time extensions.

In order to expedite matters and to avoid repetitious presentations, whenever a group of people wish to address the City Council on the same subject matter, those persons are encouraged to designate a spokesperson to address the City Council.  The Mayor may extend the time allocation for a designated spokesperson if the persons for whom he or she speaks agree to yield their time

EXHIBIT 1

to the spokesperson.

### Sec. 1-60. Consideration of Ordinances, Resolutions and Motions

(a) *Printed Form*: All ordinances and resolutions shall be presented to the Council only in written form.

(b) *City Attorney to Approve*: All ordinances and resolutions shall be approved as to form and legality by the City Attorney.

(c) *Recording of Votes*: The ayes and noes shall be taken upon the passage of all ordinances and resolutions and entered upon the official record of the City Council.

(d) *Majority Vote Required*: Unless otherwise required by law, approval of every ordinance, resolution, or motion shall require the affirmative vote of a majority.

### Sec. 1-70. General Procedures

(a) *General Procedure:* General rules of parliamentary procedure as defined in this document and consistent with the City Charter and any applicable City ordinance, statute or other legal requirement, shall govern the proceedings of the City Council. To the extent not inconsistent with these rules, the City Council shall use Robert's Rules of Order as a general guideline for additional rules of parliamentary procedure without being a procedural requirement. However, failure to abide by, or adhere to, these rules shall not nullify or negate any action by the City Council. These rules of parliamentary procedure are intended solely as a guideline and tool, and are not intended to limit the inherent power and general legal authority of the City Council, or of its presiding officer, to govern the conduct of City Council meetings.

(b) *Chair of Meeting:* The Mayor shall preside over all meetings of the City Council as the Chair and enforce these rules and procedures during a meeting. In the absence of the Mayor, the Mayor Pro Tem shall assume the Chair responsibility at the meeting. In the absence of the Pro Tem, the City Council will choose a Chair for the meeting.

(c) *Authority of the Chair:* The Chair shall make decisions on questions of procedure, subject to review by the City Council as a whole as provided in Section 1-80(c)(4).

(d) *City Council Deliberations:* The Chair has the responsibility to control the discussion and the order of speakers. Councilmembers will generally be called upon in the order of the request to speak. Generally, a Councilmember may not be recognized to speak subsequently until each Councilmember has had an opportunity to obtain the floor. A Councilmember holding the floor may address a question to another Councilmember and that Councilmember may, should they so choose, respond to the question while the floor is still held by the Councilmember asking the question.

(e) *Limits to Deliberations:* After an agenda item is announced by the Chair, the City Council may discuss the item without the need for a motion on the item. Councilmembers will limit their comments to the subject matter or motion currently being considered. The intent of this policy is not to limit debate, but rather to assist Councilmembers in their efforts to communicate effectively and concisely.

EXHIBIT 1

During work session meetings, each Councilmember shall have two (2) opportunities to speak on an agenda item that is not on consent agenda, limited to five (5) minutes each. All Councilmembers will be permitted a third opportunity to speak if approved by a majority vote of the City Council. During work session meetings, each Councilmember shall have one (1) opportunity to speak on consent agenda items for three (3) minutes. During regular or special meetings, each Councilmember shall have three (3) opportunities to speak on an agenda item, limited to three (3) minutes each. Responding to a request for clarification from another Councilmember or staff responses will not be included in the time allotments.

(f) *Repetitious Comments Prohibited:* A speaker or Councilmember shall not present the same or substantially the same items or arguments to the City Council repeatedly or be repetitious in presenting oral comments. A speaker or Councilmember shall not present an argument on a matter previously considered by the City Council at the same session.

(g) *Obtaining the Floor:* Any member of the City Council wishing to speak shall first obtain the floor by making a request for the floor to the Chair. The Chair shall recognize any Councilmember who appropriately seeks the floor.

(h) *Motions:* Motions submitted for a vote shall contain only one question. If two or more points are involved, any member may require a division, if the question reasonably admits of a division. Motions may be made and seconded by any member of the City Council except the Chair. The most common motions are as follows:

1. Amending a motion. Any Councilmember may move to amend a pending motion. No more than two amendments may be made to a pending motion. The last amendment shall be voted on first.

2. Postpone to a Certain Date. This motion is used to delay consideration of an item until a specified date, i.e., the next City Council meeting, etc.

3. Postpone Indefinitely. This motion is used to delay consideration of an item until an unspecified date.

4. Point of Order. Any Councilmember may raise a point of order at any time. A point of order means that the Councilmember is asking for a ruling on whether the rules of procedure are being followed. A point of order shall immediately be acknowledged by the Chair, and all debate must stop. The point of order shall first be made to the Chair for a ruling, stating the alleged violation with specificity. A point of order directed to the Chair does not require a second and is not subject to amendment. The Chair rules on the point of order. The member may appeal the Chair's ruling to the Council. The appeal requires a second and the person making the appeal may make a brief statement and the Chair may respond. An appeal may generally be debated by the Council, but each councilmember may speak only once. The Council may affirm or overrule the Chair's ruling by a majority vote of the Councilmembers present.

5. Reconsideration. A councilmember who voted in the majority may move to reconsider an item that City Council has voted on. The motion and any action must be made immediately after the vote on the matter, and before the City Council has begun discussing or considering any other business.

EXHIBIT 1

(i) *Procedures for Motions:* The following is the general procedure for making motions:

    1.    The item is presented by Staff or others, followed by questions and discussion by Councilmembers.

    2.    A Councilmember who wishes to make a motion shall first obtain the floor.

    3.    A Councilmember who wishes to second a motion shall do so through a request to the Chair.

    4.    Before a motion can be discussed, it shall be seconded. If a motion does not receive a second after a reasonable time, a Councilmember may call for a "point of order," which mandates that the motion receives an immediate second, or it dies.

    5.    Once the motion has been properly made and seconded, the Chair shall open the matter for further discussion offering the first opportunity to the moving party and, thereafter, to any Councilmember properly recognized by the Chair. The Chair may participate in discussion.

(j) *Continuance of Discussion or Hearings:* Any item being discussed or any public hearing at a City Council meeting may by motion be continued or tabled to any subsequent meeting.

(k) *Communications with Applicants or Petitioners*: Any Councilmember's communication with an applicant or petitioner outside of a public meeting regarding a matter that will come to City Council for a decision must be disclosed in writing and provided to the City Secretary prior to City Council discussion or deliberation of the action. Examples include but are not limited to discussion with a property owner regarding his or her rezoning request, or discussion with a vendor prior to bid award.

(l) *Call for Recess:* The Chair shall call for a recess of ten (10) minutes at least every two (2) hours , or if requested by any two (2) Councilmembers.

(m) *Call for the Vote:* A Councilmember may call for the vote, in essence to end discussion and debate, only when the Councilmember has obtained the floor. A Councilmember may make a motion calling for the vote, but not before each Councilmember that wishes to speak has had at least one opportunity, and the motion must receive a second. The motion is not debatable and a vote on the motion shall take place immediately after a second is received. The motion is approved only if two-thirds (2/3) of the Councilmembers in attendance approve. If the motion fails, debate shall continue. A subsequent motion to call for the vote may be made after additional discussion.

(n) *No further discussion following a vote.* After a vote has been taken on an item, there shall be no further discussion of that item by the Mayor or a Councilmember during the meeting.

(o) *Votes not to be taken twice.* It is the responsibility of each Councilmember to ask for clarification before a vote on any motion properly made and seconded. Once a vote has been taken, a second vote will not be held because of Councilmember error unless a Motion for Reconsideration is properly made.

(p) *Concluding meetings.* In order to achieve effective decision making and sound judgment, and in consideration of citizen, guest and staff expectations, meetings shall not extend beyond 11:00 pm except as provided herein. The Mayor or presiding officer shall not conclude a meeting when

EXHIBIT 1

discussion of the item on the table is in progress. The Mayor or presiding officer shall allow discussion to continue until complete or a time when ending is appropriate. Meetings shall not end if a time sensitive matter that requires action by the City Council has not yet been considered.

### Sec. 1-80.    Decorum

(a)    *General*: During City Council meetings, Councilmembers shall preserve order and decorum, shall not interrupt or delay proceedings, and shall obey the rules of the City Council. Council Members shall demonstrate respect and courtesy to one another, to City Staff and to members of the public appearing before the Council. Councilmembers shall seek to phrase and communicate all writings, publications and speeches in a professional and constructive manner.

Members of the City Council will not condone any unethical or illegal activity from any Councilmember or members of the Staff. All members of the Council shall uphold the intent of this policy and govern their actions accordingly.

(b)    *Mayoral Responsibilities:*

1.    *No vote.*  The Mayor shall have a voice in all matters before the Council but shall only vote in accordance with City Charter provisions.

2.    *Chair.*  The Mayor shall serve as the Chair of all meetings. The Mayor Pro Tem shall preside in the absence of the Mayor.  When presiding over any meeting, the Mayor Pro Tem shall only vote in instances where the Mayor could vote in accordance with Charter provisions.

3.    *Preserve Order and Decorum*.  The Chair is responsible for preserving order and decorum and shall keep the meetings orderly by recognizing each Member for discussion, encouraging civil debate among Members, and keeping discussion limited to the agenda item being considered.

4.    *Encourage Participation.*  The Chair will encourage all Councilmembers to participate in Council discussion and give each Member an opportunity to speak before any Member can speak again on the same subject.

5.    *Official Spokesperson*.  The Mayor is the official spokesperson for the Council on all matters unless absent, at which time the Mayor Pro Tem or appropriate designee will assume the role. The views presented by the Mayor, or the Mayor Pro Tem in his/her absence, should provide equitable representation of all Councilmembers.

(c)    Council Responsibilities

1.    *Be Prepared.*  Each Councilmember is responsible for being prepared to discuss the agenda.

2.    *Attendance.*  Attendance at work sessions and meetings is essential to the effective execution of a Councilmember's duties.  It is the responsibility of Councilmembers to be informed about action taken by the City Council in their absence. In the case of an absence from a work session, the Councilmember is responsible for obtaining this information by viewing the

EXHIBIT 1

recording of the work session prior to the City Council meeting during which the items are to be voted upon. The City Manager is responsible for maintaining an attendance log for the Mayor and each Councilmember, which is a public document.

3. *Decorum.* When addressing an agenda item, the Councilmember shall first be recognized by the Chair, shall confine comments to the question under debate, shall avoid reference to personalities, shall refrain from impugning the integrity or motives of any other Councilmember or Staff Member during debate or vote, and shall refrain from publicly implying or insinuating wrong-doing by another Councilmember or Staff Member without clear evidence of such behavior.

4. *Appeal.* Any Councilmember may appeal a ruling by the Chair to the Council as a whole. If the appeal is seconded, the person making the appeal may make a brief statement and the Chair may respond. An appeal may generally be debated by the Members, but each Member may speak only once. The affirmative vote of a majority of the Councilmembers present and voting shall be necessary to approve the motion to appeal.

5. *Enforcement of Policy.* Any Councilmember may ask the Chair to enforce the policy established by the Council. Should the Chair fail to do so, a majority vote of the Councilmembers present shall require the Chair to enforce the policy.

6. *Wait to be Recognized.* A member of the Council who wishes to be recognized shall request to speak and shall not proceed with remarks until recognized and named by the Chair of the meeting. Remarks shall be confined to the question before the Council.

7. *No Private Discussions.* While any other person who has been recognized by the Chair is speaking, other members shall not hold private discourse or in any manner interrupt the speaker. In all discussions, disrespectful language and behavior shall be avoided.

8. *Duty to Vote.* All Councilmembers must vote either in the affirmative or in the negative. A present member who does not vote will be officially recorded as a negative vote. When a Councilmember recuses oneself due to an actual or perceived conflict of interest and files the required affidavit, that Councilmember is not counted as present for quorum purposes and is not deemed to be "voting" for purposes of determining whether there has been a "majority vote of those voting and present."

9. *Third Party Representation.* A Councilmember may not represent any third party before any City board or commission.

10. *Personal Communication Devices.* All personal communication devices should be placed in a silent mode during any City Council meetings. Personal communication devices shall not be used for communicating City-related business. If an individual is using his or her personal communication device during a meeting and a member finds it disruptive, he or she should inform the Mayor.

11. *Dress Code.* It is the policy of City Council to create a dignified and professional environment for City Council meetings. Therefore, all Councilmembers shall dress in a professional manner while attending a City Council meeting or work session, or while representing the City in an official capacity as a member of the City Council.

EXHIBIT 1

(d) *Citizens' participation:* The following rules shall be in force for all persons in attendance at all meetings of Council:

1. *Rules of Decorum.*  Persons attending City Council meetings should observe the same rules of propriety, decorum and good conduct as they would show in a courtroom, a place of worship, or at any other serious or solemn occasion during which matters of importance are being considered.  Visitors will refrain from engaging in chatter, private conversations, and from making other distracting noises while the City Council is in session.  Phones and other electronic devices should be set to off or silent mode.  Visitors should not applaud, boo, clap, or otherwise audibly express approval or disapproval of the speech of another person in a manner likely to disturb the meeting.

2. *Addressing City Council.*  Persons wishing to address the City Council on any matter listed on the agenda may be recognized by the Chair, provided the person has completed a Citizen Speaker Registration form, and presented it to the City Secretary prior to the beginning of the regularly scheduled City Council meeting or immediately following their address to the City Council. Speakers shall approach the lectern and give his/her name and city of residence before speaking. Speakers shall address the Mayor and City Council with civility that is conducive to appropriate public discussion. All public comments should be addressed through the Chair. Each speaker will be allowed four (4) minutes to speak.  A majority vote of the City Council is required for any time extensions.  No person shall be allowed to address the City Council more than one time per agenda item.

3. *Address Chair.*  Persons may not engage in discussions with the City Council or staff during Council deliberations unless specifically asked a question by a Councilmember. Persons who have been asked a question by a Councilmember must be recognized by the Chair before being allowed to speak. The Chair may end any question and answer session between Councilmembers and a member of the public in order to facilitate the order of business.

4. *Printed Materials.*  Persons may present printed material to the City Secretary to distribute to the City Council during a meeting.

5. *No Disruptions.*  Persons attending City Council meetings shall remain seated or may stand in the back of the room and come and go so long as it does not disrupt the meeting. Persons in attendance shall not carry signs or placards. No person attending any City Council meeting shall delay the proceedings or refuse to obey the orders of the Chair.

6. *Removal.*  Disturbances, transgressions of the rules or disorderly conduct in the City Council Chamber or other City Council meeting room may cause the transgressor to be removed from the meeting. The Chair of the meeting shall exercise control over persons who disrupt the meeting in the following order of action:

    a. Call the person to order, advising that person of the infraction;
    b. Advise the person that the infraction must cease immediately or the person will be ordered to leave the meeting;
    c. Order the person to leave the meeting.  A police officer may remove an individual or individuals for disrupting a meeting as authorized by Texas Penal Code Section 42.05.

EXHIBIT 1

7. *Room Limitations.* Persons are encouraged to attend Council meetings; however, the number admitted shall be limited to the fire safety capacity of the Council Chamber as determined by the Fire Chief or designee. If the capacity is surpassed, the City Council may adjourn the meeting and move its proceedings to a location that will accommodate a larger number of participants, or may make a live broadcast of the proceedings available in a nearby room.

## Sec. 1-90.     Staff Relations

(a) *Presentations.* Staff presentations will be concise and will provide factual background information on the item as well as a recommendation for the City Council. Written presentations shall, to the extent possible, be provided to the City Council before the meeting.

(b) *Ask Questions in Advance.* To ensure proper presentation of agenda items by Staff, questions arising from Councilmembers after receiving their information packet should be, whenever possible, presented to the City Manager for Staff consideration prior to the City Council meeting. This allows Staff the time to address Councilmembers' concerns and provide all Councilmembers with additional information as necessary. When questions are posed by Councilmembers in advance of a meeting, the questions and Staff responses shall be included in the staff presentation at the meeting.

(c) *Presentation Requirements.* The City Manager shall designate the appropriate Staff Member to address each agenda item and shall see that each presentation is prepared and presented to inform and educate the City Council on the issues that require City Council action. The presentation should be professional, timely, and allow for discussion of options for resolving the issue. As a summary, the Staff Member making the presentation shall make it clear if no City Council action is required, or shall present the Staff recommendation as a part of the presentation, and/or present the specific options for City Council consideration. Other than asking clarification questions, City Councilmembers should allow the Staff Member to complete his or her presentation before discussing or debating the topic.

(d) *Motions of Direction to City Manager.* During a work session or regular meeting, discussion may lead to a point where the council wishes to direct the City Manager in a particular manner. The appropriate way to accomplish this is for a councilmember to make a motion in which the City Manager is directed towards, or away from, a particular course of action. There must be a second and a vote on the Motion. If approved by a majority of the Councilmembers in attendance, the Motion of Direction becomes the official direction of the Council and will be transcribed and maintained for the record.

(e) *Use of Staff Time.* The City Manager is directly responsible for providing information to the City Council concerning any inquiry by a specific Councilmember that is significant in nature and would be beneficial to all Councilmembers. If the City Manager or the Staff's time is being dominated or misdirected by a Councilmember, it is the City Manager's responsibility to inform the Mayor.

(f) *Ethical Behavior Required.* The City Manager will exhibit the highest professional and ethical behavior. The City Manager is responsible for the professional and ethical behavior and discipline of his/her Staff. The City Manager is also responsible for ensuring that the Staff receives the training and information necessary to address the issues facing municipal government.

(g) *Respect and Courtesy.* All Staff Members shall show one another, each Councilmember, and the

EXHIBIT 1

public respect and courtesy at all times. They are also responsible for making objective, professional presentations to ensure public understanding and confidence in the process.

(h) *Conflicts.* Any conflicts arising between the City Staff and the City Council will not be allowed to affect the normal course of business, but will be addressed by the Mayor and the City Manager outside of a public meeting.

(i) *Council Orientation.* The City Manager, after an election, will ensure that the Staff has prepared information needed for the orientation of new Councilmembers and will inform the City Council of any available Texas Municipal League conferences and seminars.

### *Sec. 1-100.   Statements by Public Officials Regarding Litigation*

When the City of Killeen is involved in litigation or a legal dispute, Councilmembers shall refrain from commenting on settlements, appeals, or other issues related to the subject until the matter is resolved. The Mayor, City Manager, City Attorney or Communications Officer shall be authorized to provide any public responses or comments as needed on matters involving litigation.

### *Sec. 1-110.   Disbursement of City Council Requested Information*

As a general courtesy and to maintain equality in the disbursement of information, documentation or data requested by a Councilmember from Staff shall be provided to all members of the City Council.

EXHIBIT 1

## DIVISION 2. CITY COUNCIL POLICIES AND OPERATING PROCEDURES

### Sec. 2-10.    State and Federal Legislation and Rule-Making Proceedings

(a)    The City Manager shall notify the City Council of pending matters of legislation or rule-making that may affect the interests of the City.  The Mayor or any Councilmember may request that a legislative or rule-making initiative be presented to the City Council for a formal determination by the City Council of endorsement or opposition.  The City Manager may, in the exercise of his professional judgment, determine to take action on or intervene in support of or opposition to a legislative or rule-making matter consistent with the City Council's adopted state and federal legislative agendas.

(b)    This policy is not intended to prohibit or restrict a member of the City Council acting as a private citizen, and not on behalf of the City, from participating in legislative or rule-making matters provided the Councilmember does not in any way imply that the position of the Councilmember is the official position of the City unless the City Council has so decided.  A member of the City Council may accurately represent himself or herself as an elected official and as a member of the City Council, but may not use City resources, staff, letterhead, official email, or any City-approved logo in doing so.

### Sec. 2-20.    City Council Travel and Business Expenses

(a)    *Training Encouraged.*  Subject to available funding, the City Council is encouraged to attend training relevant to the City Council's duties, such as:

1. Annual meeting of the Texas Municipal League and affiliates
2. Texas Municipal League newly-elected officials orientation (for newly-elected members of the City Council)
3. National League of Cities and affiliates annual meeting - Washington, D.C.
4. National League of Cities annual Congress of Cities (various locations)
5. Other meetings as designated and approved by the Mayor or the City Council
6. Attendance to committee or association functions related to the Texas Municipal League, the National League of Cities, or other organizations as approved by the Mayor or the City Council
7. Attendance by the Mayor at the annual meeting of the U.S. Conference of Mayors

For purposes of this policy, "attendance" includes the payment of applicable membership fees for the Councilmember and the allowable expenses as described below. A member of the City Council may not commit to membership or participation in or attendance at meetings of organizations not listed in subsection (A) without the approval of the Mayor or the City Council except in the Councilmember's individual capacity and at the Councilmember's sole expense.

(b)    *Reimbursement Process.*  A Councilmember who seeks to incur or obtain reimbursement for expenses allowed under this policy shall file with the City Manager an approval request or reimbursement request, as the case may be, in accordance with current City policy.

EXHIBIT 1

### Sec. 2-30.  Council Requests for Information or Services from Staff

By Charter, the people of Killeen have chosen a council-manager form of government. This means that the City Council is responsible for setting policy direction for the City Manager, and the City Manager is responsible for implementing the City Council's policies.  This separation of duties must be kept in mind when requesting information or services from City Staff.  Section 29 of the City Charter specifically provides:

> Neither the council nor any of its members shall direct the appointment of any person to, or his removal from office, by the city manager or by any of his subordinates; provided, however, that the appointment of assistant city managers, department heads and the city secretary shall be subject to the approval of the council. Except for the purpose of inquiry, the council and its members shall deal with the administrative service solely through the city manager and neither the council nor any member thereof shall give orders to any subordinates of the city manager, either publicly or privately.

### Sec. 2-40.  Process for Filling Unexpired City Council Term

If a vacancy on the City Council is required by Charter section 26 to be filled by City Council appointment, the following process will be used:

(a)  The vacancy will be advertised in the manner that is determined to reach the largest audience advising Killeen residents of the vacancy and giving interested residents two weeks to complete and return a fully-executed and notarized Application for a Place on the General Election Ballot. This form can be obtained from the City Secretary's office and must be received by the City Secretary's office by the specified date for the applicant to be considered for appointment to the vacant seat.

(b)  All completed applications received by the deadline will be forwarded to the City Council for review. The full City Council will conduct interviews with selected applicants.  Interviews will be private unless prohibited by the Texas Open Meetings Act.

(c)  City Council will conduct deliberations in private unless prohibited by the Texas Open Meetings Act.  The appointment will occur in an open and properly posted public meeting.

### Sec. 2-50.  Political Signs

Political signs shall comply with state law and the City's sign ordinances. Nothing contained in this policy shall be construed as allowing the placement or attachment of any sign on any tree, pole, building, or other sign or damaging in any manner any City property. This policy is not intended to limit in any manner the authority of the State or election officials regarding electioneering and the placement of signs, and this policy does not require the owner of a polling place or any property not owned by the City to allow the placement of signs on that property. No sign may be placed so as to encroach upon or obstruct any street, driveway, parking space, fire lane, sidewalk, pathway, or visibility triangle.  Signs in violation of the City's Sign Ordinance will be removed.

EXHIBIT 1

### Sec. 2-60. Use of City Facilities, Staff or Resources by the Mayor or City Councilmembers for Mayor or City Councilmember-Sponsored Meetings.

Recognizing that occasions arise where the Mayor or Councilmembers wish to engage with the citizens of Killeen outside of a formal City Council meeting, and also recognizing that City resources and staff time have limits, this policy sets forth the guidelines under which City facilities and resources may be used to support such meetings.

Each calendar year, the Mayor and each Councilmember may hold up to three non-political Mayor- or Councilmember-sponsored meetings that are supported by city resources in the following manner:

(a) The complimentary use of a meeting space at the Killeen Community Center, Lions Park Senior Center, Police Department Headquarters Community Room, Killeen Arts and Activities Center, Killeen Civic and Conference Center boardroom, or the community room of a Fire Station if the desired space is available and not otherwise scheduled. The meeting space should be reserved in advance, but no more than two months in advance.

(b) Technical support, to the extent it is available at the chosen space, and not otherwise in use.

(c) Staff presentations, scheduled in advance through the City Manager.

(d) The meeting will not occur between January 1st and election day on which the Mayor or a Councilmember position is to be elected, so that there can be no allegation that tax-payer dollars are being illegally spent in support of the Mayor or a Councilmember's reelection effort. This restriction does not apply to a candidate who is running unopposed.

In order to take advantage of the services listed above, the requesting Mayor or City Councilmember shall complete and return the Support for Mayor or Councilmember-Sponsored Meeting form to the City Manager. (See Attachment B) The City Manager or Assistant City Manager will manage a shared calendar for events described above to alleviate the overbooking of City staff and resources.

These guidelines are not intended to stop the Mayor or a City Councilmember from having a Mayor or City Council-sponsored meeting that is not supported by city resources.

These restrictions do not apply to the Annual State of the City address.

### Sec. 2-70. Annual Special Workshop.

City Council will hold an annual special workshop or townhall specifically designed to explain the mission, vision, direction, and special projects for the City to be held annually around October and moderated by the City Manager or Assistant City Manager where the Mayor and all Councilmembers are present. The general format of the workshop will be: Welcome/Introduction by the City Manager or Assistant City Manager, three (3) – five (5) minute presentations by each Councilmember, question and answer session with citizens related to topics on the agenda, and closing remarks.

### Sec. 2-80. Assistance to Community Organizations for Special Events

EXHIBIT 1

Provided that adequate funding exists, the City will support the following community events on an annual basis, by providing in-kind (non-monetary) services.  The City Council further determines that there is a public purpose for the support of these community events.

1. Christmas Parade
2. Veterans Day Parade
3. Wreaths for Vets
4. Celebrate Killeen Festival
5. Memorial Day Ceremony
6. Holiday Under the Stars
7. Killeen Rodeo
8. Food for Families
9. HEB Feast of Sharing
10. Breast Cancer 5K
11. MLK Day Walk
12. Juneteenth Festival
13. Juneteenth Parade
14. National Day of Prayer

The City Council may approve in-kind support of up to three (3) additional events, after review and recommendation from the City Manager.

EXHIBIT 1

## DIVISION 3.  CITY COUNCIL COMMITTEES AND CITIZEN BOARDS, COMMISSIONS AND COMMITTEES

### Sec. 3-10.    *City Council Committees*

(a)  *Purpose.*  Due to the complexity and diversity of City government issues, a closer view of some issues is required by the City Council. To provide a mechanism for continuous evaluation and discussion of these various issues beyond the limited time available at regularly scheduled work sessions, the City Council adopts this policy regarding the establishment and use of City Council committees.

(b)  *Assignment to Committees*.  Agenda items may be assigned to a committee by the Mayor with the consent of the City Council, or by the City Council.

(c)  *Standing committees.*  Standing committees may be created as necessary to study and evaluate on going or long-term issues within the City. They will be created by Resolution, which must state the specific role the committee is to serve and name the members. Standing committees shall be subject to annual review by the City Council.

(d)  *Ad Hoc Committees*.  Ad hoc committees may be created by the Mayor as necessary to study and evaluate a specific issue or problem within the City and are intended to be temporary.  The Mayor shall make appointments to ad hoc committees with the consent of the City Council.  When created, an ad hoc committee will also be given a sunset deadline.  The committee will cease upon the earlier of the sunset date or the date the committee's specific task is complete.  If the task is not complete by the sunset date, the Mayor shall establish a new sunset date.

(e)  *Committee Responsibilities*.  Each committee, after receiving an assignment from the City Council, will consider policy decisions and actions, study issues, evaluate options, and develop recommendations. Each committee shall prepare reports and make recommendations to the City Council at a work session regarding every matter assigned to or considered by the committee, no less often than every six months.  The committees shall only serve in an advisory capacity, and only for the City Council. No committee shall have any authority to make final decisions regarding the merits or resolution of any matter assigned to or considered by it.

(f)  *Appointments and Vacancies*.  Appointments to committees and subcommittees will be made as soon as practicable after the annual City Council election in the following manner:  Mayor  has first choice of three committees, followed by Councilmembers in tenure order selecting one committee each, followed by additional round(s) of Councilmembers selecting committees until all committee appointments are filled.  For the purpose of this section, tenure shall mean time in current office without a break from the time of election or appointment to present.  In the event that tenure of Councilmembers is the same, the order of those members' selections will be based on the number of votes received when elected in highest to lowest order.  Appointments to fill vacancies to assure continuity on the committees will be made in the same manner beginning with the next Councilmember in tenure order.

(g)  *Chair*.  The Chair of each City Council standing or ad hoc committee shall be appointed by the Mayor.

EXHIBIT 1

(h) *Staff Liaison*.  The City Manager shall assign each City Council standing or ad hoc committee a Staff Liaison who shall assist the Chair in preparing the meeting agendas and coordinating the logistics of the committee meetings.

(i) *Minutes of Meetings*.  Committees shall keep minutes of their meetings.  The minutes shall provide a summary of all business discussed or considered, action taken, the outcome of any votes, and those persons present at committee meetings.  When completed, the minutes shall be  signed by the Chair and maintained by the Staff Liaison for the committee.  A copy of the minutes shall be distributed to the City Council.

(j) *Agenda Postings*.  Notice of all committee meetings shall be posted in accordance with the Texas Open Meetings Act ("TOMA").  However, since committee membership is made up of less than a quorum and therefore is not a meeting subject to the TOMA, a good-faith mistake in the publication of the agenda will not require the cancellation of the meeting.

(k) *Councilmember as Liaison*.  When a Councilmember is appointed to serve as a member of a board, committee or commission for an outside agency such as KEDC, KTMPO, etc., the Councilmember is responsible for keeping all Councilmembers informed of significant activities of that board, committee, or commission. The appointed Councilmember should report the actions of the board, committee, or commission during a work session of the City Council at a minimum of every six months for an ad hoc committee, annually for a standing committee, and quarterly for an outside agency.

(l) *Recommendation Regarding the Continuation of Committees*.  The Mayor shall annually review the activity of the existing standing committees to identify inactive committees and shall provide a report to the City Council recommending which committees should be continued and which dissolved.

### Sec. 3-20.    Citizen Boards, Commissions and Committees

(a) *Purpose*.  This Policy establishes the procedure for the appointment and reappointment of citizens to Boards, Commissions, and Committees for the City of Killeen, as well as the duties of Board, Commission, and Committee members.

(b) *Time of Appointment*.  All appointments and reappointments shall be made by the City Council prior to October 1st of each year for all positions to be filled that fiscal year. (Code of Ordinances, sec. 2-116)

(c) *Review of Applications*.  Staff will compile and present all applications for appointment to citizen boards, commissions, and committees to the City Council at the specified work session meeting, and two weeks before the work session.

(d) *Committee Membership Types*: Persons appointed to Committees shall be designated as either Regular Members or Ex Officio Members. A Regular Member is a member for all purposes; it is not required that he or she hold a specific office to be qualified for appointment. An Ex Officio Member is appointed to a committee because of a position he or she currently holds. Regular Members count towards a quorum and have voting privileges, while Ex-Officio Members do not (effective 10-1-19).

EXHIBIT 1

(e)  *Subcommittees.*  Some citizen boards, commissions, and committees have subcommittees consisting of two Councilmembers.  It is the responsibility of the subcommittee members to review and discuss applications for the board, commission, or committee for which they are a subcommittee member, and to reach a consensus regarding which applicant(s) are most qualified to fill a position and shall be recommended to the full City Council. This decision should be made prior to the work session at which appointments are scheduled to be discussed. As required or requested and to ensure that the purpose of the board, commission or committee is carried out effectively, the subcommittee Councilmembers will also act as liaisons between the board, commission or committee and the Staff; board, commission or committee members and the City Council; and between board, commission or committee members and any other person.

The following boards, commissions and committees have appointment subcommittees:  BOA-Construction, BOA-Fire Prevention, BOA-Airport Hazard, BOA-Zoning, Animal Advisory Committee, Senior Citizens Advisory, Youth Advisory Commission, and Bell County Health District.

(f)  *Full Council Appointments.*  Some citizen boards, commissions, and committees do not have appointment subcommittees.  For these committees, appointments are made after the full City Council has reviewed the appropriate applications and has had the opportunity to discuss applications in a work session.  Consensus regarding which applicants are the most qualified to fill a position will be reached during a work session.  If necessary, appointment decisions will be reached through a nomination process.

The following boards, commissions, and committees do NOT have appointment subcommittees: Arts Commission, Community Development Advisory Committee, Heritage Preservation Board, Killeen Economic Development Committee, Killeen Sister Cities, Planning & Zoning Commission, TIRZ #2 Board, and Killeen-Temple Metropolitan Planning Organization (KTMPO)

(g)  *Term Limits.*  To encourage broad citizen participation, no person may be appointed to serve more than six consecutive years, excluding unexpired terms, on a particular board, commission, or committee.  This limitation does not apply if a particular position requires specialized knowledge, licenses, or certifications and no other qualified and interested person is available, or for other good cause found by the City Council and specified in the appointment resolution.  (Code of Ordinances, sec. 2-117)

(h)  *Criteria for Appointment.*  When determining the most qualified applicant, Council should consider the following information:

1.  Date of application;
2.  Primary residence— Is residency a requirement for the position?  Is applicant a City of Killeen resident or live in the ETJ?
3.  Is applicant currently serving on other boards, commissions, and/or committees?
4.  Does applicant have specialized knowledge, licenses, or certifications that are required or helpful for the position?
5.  If applicant is being considered for reappointment, is such reappointment prohibited by term limits?
6.  If applicant is being considered for reappointment, has applicant maintained a good record of attendance?

(i)  *Chair.*  Each committee shall have the power to adopt a process for electing and removing its chair.

EXHIBIT 1

(j) *Staff Liaison.*  The City Manager shall assign each Board, Commission, or Committee a Staff Liaison who shall assist the Chair in preparing the meeting agendas and coordinating the meeting logistics.

(k) *Duty to Attend Meetings and to Vote.*  Board, Commission, and Committee members have a duty to attend meetings unless excused in advance by the Chair.  Absences by the Chair must be approved in advance by the Vice-Chair.  All members must vote either in the affirmative or in the negative on each motion presented, unless he or she has disclosed a legal or perceived conflict of interest and filed the required affidavit in advance.  A present member who does not vote and who has not filed the required affidavit will be officially recorded as a negative vote.

(l) *Minutes of Meetings.*  Committees shall keep minutes of their meetings.  The minutes shall provide a summary of all business discussed or considered, action taken, the outcome of any votes, and those persons present at committee meetings.  When completed, the minutes shall be signed by the Chair and maintained by the Staff Liaison for the committee.

(m) *Agenda Postings.*  Notice of all committee meetings shall be posted in accordance with the Texas Open Meetings Act ("TOMA").  However, since some citizen committee meetings do not meet the definition of a meeting under the TOMA, a good-faith mistake in the publication of the agenda for a meeting to which the TOMA does not apply will not require the cancellation of the meeting.

(n) *No Employee Appointments.*  To ensure that citizens have an adequate opportunity to participate on citizen boards, commissions, and committees, current City of Killeen employees will not be appointed to citizen boards, commissions, and committees, even if they are residents of the City of Killeen.   If an individual who is currently serving on a citizen board, commission, or committee is hired by the City of Killeen, once the current term is complete, he or she is not eligible for reappointment to his or her position on the board, commission, or committee.  However, an employee may be appointed to a board, commission or committee if state law requires an employee to serve on a specific board because of that employee's position with the City.

(o) *No City Councilmember Appointments.*  Understanding that citizen committees are most effective when the members are able to communicate freely, no City Councilmember will be appointed as a member of a citizen committee.

(p) *Recommendation Regarding the Continuation of Committees.*  The Mayor shall annually review the activity of the existing committees to identify inactive committees and shall provide a report to the Council recommending which committees should be continued and which dissolved.

(q) *Bylaws.* No board, commission or committee will create or amend its bylaws in a way that limits the City Council or Staff or that creates requirements for the City Council or Staff. Further, no board, commission or committee will create or amend its bylaws to change the purpose or mission of the board, commission or committee, expand the scope of the board, commission or committee, or in any way cause the board, commission or committee to function in a way not intended by the City Council unless approved by the City Council.

## Sec. 3-30. Communications on Behalf of the City by Citizen Members of Boards, Commissions and Committees

EXHIBIT 1

(a) Boards, commissions, and committees, whether established by reason of State law, the Charter, by ordinance or on an ad hoc basis, are an integral part of the municipal government process. The citizens who serve on City boards, commissions, and committees provide an important service to the citizens of Killeen. Boards and commissions, and the members of those boards, commissions, and committees, do not, however, speak for the City on larger issues of City governance. The City Council is responsible for all aspects of the City's governance and it is the legislative and policy-making body for the City.

(b) If a board, commission, or committee desires to communicate to others a position on any matter of public concern, the board, commission, or committee shall first seek approval from the City Council before engaging in such communication. The City Council will speak for the City. The City Council will determine the official position of the City on the issue presented by the board, commission or committee, and whether it shall be communicated.

EXHIBIT 1

## DIVISION 4. COUNCIL DIRECTIVES AND EXECUTIVE LIMITATIONS

## A. Council Directives to Management

### Sec. 4-10. *Public Use of City Hall and Other City Facilities*

The City Manager shall develop a program addressing the use of the Council Chambers, the meeting rooms in City Hall, and other city-owned meeting space by other governmental entities, non-profit groups for public purposes, and City departments. The program shall be consistent with current security protocols and shall recognize the public use of City Hall for public business as paramount.

### Sec. 4-20. *Policy for Support of Community Events*

The City Manager shall develop a policy providing for the annual support of the community events listed in sec. 2-80. Such support shall be in-kind (non-monetary), and subject to available funding. The policy shall also provide guidelines for supporting other events not listed in sec. 2-80, in a manner that will recoup the City's costs.

### Sec. 4-30. *Compensation of City Employees*

The City Manager is directed to bring forward an annual employee compensation plan that is within the City's financial and budgetary limits, and compensates all City employees at a level that is competitive with the compensation paid to employees within the City's employment market area. The City Manager is directed to have compensation surveys conducted to determine whether employment compensation for City employees is competitive.

### Sec. 4-40. *Restrictions on the Representation of Third-Parties by Former City Employees ("Revolving Door Policy")*

A former employee of the City who was employed as a departmental director, Assistant City Manager, City Manager, City Auditor or Municipal Judge may not make any communication to or appearance before the City Council before the second anniversary of the date the former employee ceased to be employed by the City if the communication or appearance is made: (1) with the intent to influence the City Council; (2) is made or done on behalf of any person other than the former employee in an individual capacity, and; (3) is made or done in connection with any matter on which the former employee seeks official action.

### Sec. 4-50. *Motions of Direction to City Manager*

During a work session or regular meeting, discussion may lead to a point where the City Council wishes to direct the City Manager in a particular manner. The appropriate way to accomplish this is for a City Councilmember to make a motion in which the City Manager is directed towards, or away from, a particular course of action. There must be a second and a vote on the Motion. If approved by a majority of the City Councilmembers in attendance, the Motion of Direction becomes the official direction of the City Council and will be transcribed and maintained for the record.

EXHIBIT 1

### *Sec. 4-60.  Directive to Use Official City of Killeen E-mail Addresses*

To ensure compliance with the Texas Public Information Act and required retention schedules and to further transparency in the communication and discussion of City business, the City Manager will ensure that Staff uses only official City of Killeen e-mail addresses for both Staff and Councilmembers, when communicating with City Councilmembers about City business.  If circumstances require a Staff member to conduct City business on a non-City email account, the Staff member shall promptly forward the associated electronic communications to a city email account.

### *Sec. 4-70.  Delegation of Authority to Determine Purchasing Method*

Chapter 252 of the Texas Local Government Code allows a governing body to determine that an approved method other than competitive sealed bidding provides the best value for the municipality.  The Code also allows the governing body to delegate that authority to a designated representative.  The City Council hereby delegates its authority to determine which approved purchasing method provides the best value for the municipality to the City Manager.

### *Sec. 4-80.  Directive to Adopt Finance Policies and Review Annually*

The City Manager is directed to provide to the City Council a comprehensive set of Financial and Budget Policies for consideration and adoption by the Council.  Such policies shall be reviewed and adopted annually.

### *Sec. 4-90.  Issuance of Correction Deeds and Deeds Without Warranty*

The City Council hereby delegates to the City Manager the authority to issue a correction deed or a deed without warranty when the property subject to the deed was deeded to the City of Killeen either by mistake or without the City's authorization and the City has no need for the property.  Deeding the property back to the original owner shall only occur when the owner agrees to pay all taxes that would have been owed had the property never been deeded to the City.  This action will also put the property back on the tax roll.  The City Manager will promptly advise the City Council when these instances occur.

### *Sec. 4-100.  Directive to Adopt Media Policy*

(a)  The City Manager is directed to develop a media policy to establish communication protocols between staff and members of the media.

(b)  The Executive Director of Communications shall provide updates to the City Council and the citizens of Killeen as important incidents arise and in general no less than once a month. The report may be a presentation to the City Council or provided in a written report.

### *Sec. 4-110.  Delegation of Signature Authority*

Unless the Charter, a statute, regulation, order or the City Council itself states to the contrary, the City Council hereby authorizes the City Manager to delegate his signature authority to a subordinate staff member as he deems appropriate.

### *Sec. 4-120.  Directive to Develop Economic Development Policy*

EXHIBIT 1

The City Manager is directed to develop an Economic Development Policy for the City Council's consideration.

### Sec. 4-130.   Directive to Develop Street Maintenance Policy

The City Manager is directed to develop a policy addressing Street Maintenance within the City for the City Council's consideration.

### Sec. 4-140.   Directive to Develop Invocation Procedure

To solemnize its proceedings, it is the policy of the City Council to open its meetings with an invocation. In order to respect the constitutional rights of all persons, participation in the invocation or prayer will be voluntary; no one in attendance will be required to participate, and no one demonstrating appropriate respect and decorum will be excluded from participating. Everyone will be treated equally in all respects whether they choose to participate, or not participate, in the prayer or invocation.

In order to ensure compliance with this policy and with the law, the City Manager is directed to establish appropriate procedures to allow for an invocation at the beginning of City Council meetings.

This policy, and the procedure implementing the policy, is not intended, and shall not be implemented or construed in any way, to affiliate the City Council with, nor express the City Council's preference for or against, any faith, belief, or religious denomination.  Rather, this policy is intended to acknowledge and express the City Council's respect for the diversity of denominations, faiths, and beliefs represented and practiced among the citizens of Killeen.

### Sec. 4-150.   Directive Regarding Zoning Notification Boundaries and Signage

The City Manager is directed to increase to 400 feet the notification boundary for properties subject to a request for a zoning classification change.  In addition, the City Manager is directed to include appropriate signage on real property subject to a zoning classification change request.  Such signage shall be visible to the public in advance of the public hearings before the Planning and Zoning Commission and the City Council.

### Sec. 4-160.   Delegation of Authority to Approve Certain Change Orders

Texas Local Government Code sec. 271.060 allows the City Council to delegate the authority to approve a change order increasing or decreasing a contract by $50,000 or less.  The City Council hereby delegates such authority to the City Manager, however, once the cumulative amount of change orders for a single contract reaches $500,000.00, all future change orders for that contract must be taken to the City Council for approval, regardless of the amount.

### Sec. 4-170.   Delegation of Authority to Apply for Grants

Some grant applications require the authority of the governing body in order to apply for a grant on behalf of the City.  The City Council hereby delegates the authority to apply for grants to the City Manager.

### Sec. 4-180.   Delegation of Authority to Employ Police and Fire Over-Hires

The City Council has approved a set number of over-hires allowed for the police and fire departments.

EXHIBIT 1

The City Council hereby delegates the authority to the City Manager to employ such over-hires, provided that the number of over-hires does not exceed the number of over-hires currently approved by ordinance.

# B. Executive Limitations

### Sec. 4-210.    Global Executive Constraint

The City Manager shall not cause or allow any organizational practice, activity, decision, or circumstance that is either unlawful, imprudent, or in violation of commonly accepted business and professional ethics.

### Sec. 4-220.    Treatment of Customers of City Services

With respect to interactions with customers, the City Manager shall not cause or allow conditions, procedures, or decisions that are unsafe, untimely, undignified, or unnecessarily intrusive.

The City Manager will not:

1. Elicit information for which there is no clear necessity.

2. Use methods of collecting, reviewing, transmitting, or storing customer information that fail to protect against improper access to the material.

3. Operate facilities without appropriate accessibility and privacy.

4. Operate without establishing with customers a clear understanding of what may be expected and what may not be expected from the service offered.

5. Operate without informing customers of this policy or providing a way to be heard for persons who believe that they have not been accorded a reasonable interpretation of their rights under this policy.

### Sec. 4-230.    Treatment of Staff

With respect to the treatment of paid and volunteer staff, the City Manager shall not cause or allow conditions that are illegal, unfair, undignified, disorganized, or unclear.

The City Manager will not:

1. Operate without written personnel rules that (a) clarify rules for staff, (b) provide for effective handling of grievances, and (c) protect against wrongful conditions, such as nepotism and grossly preferential treatment for personal reasons.

2. Retaliate against any staff member for non-disruptive expression of dissent.

3. Allow staff to be unaware of City Manager's interpretations of their protections under this policy.

4. Allow staff to be unprepared to deal with emergency situations.

EXHIBIT 1

### Sec. 4-240. Financial Planning/Budgeting

The City Manager shall not cause or allow financial planning for any fiscal year or the remaining part of any fiscal year that deviates materially from City Council priorities, or risks financial jeopardy.

The City Manager will not allow budgeting that:

1. Risks incurring those situations or conditions described as unacceptable in the Executive Limitations policy section 4-250, entitled "Financial Condition and Activities."

2. Omits credible projection of revenues and expenses separation of capital and operational items, cash flow analysis, and disclosure of planning assumptions.

3. Provides less than the amount determined annually by the City Council for the City Council's direct use during the year.

### Sec. 4-250. Financial Condition and Activities

With respect to the actual, ongoing financial condition and activities, the City Manager may not cause or allow the development of fiscal jeopardy or a material deviation of actual expenditures from the City Council's established priorities.

The City Manager will not:

1. Expend more funds than have been budgeted in the fiscal year.

2. Incur short-term debt in an amount greater than can be repaid by certain and otherwise unencumbered revenue within 60 days.

3. Use any long-term reserves without City Council direction and approval.

4. Conduct inter-fund borrowing in amounts greater than can be restored within 120 days.

5. Allow payables or receivables not to be settled within a reasonable time frame.

6. Allow tax  payments or other government-ordered  payments  or filings to be overdue or inaccurately filed.

7. Make a single purchase or commitment of greater than $50,000 without City Council approval, unless a verifiable and documented emergency exists.  Splitting orders to avoid this limit is not acceptable.

8. Acquire, encumber or dispose of real estate unless allowed by law or approved by the City Council.

9. Issue expense checks to himself or herself without the signature of a Council-approved signatory who has been provided with appropriate documentation and receipts.

EXHIBIT 1

### Sec. 4-260.    Asset Protection

The City Manager shall not allow the City's assets to be unprotected, inadequately maintained, or unnecessarily risked.

The City Manager will not:

1.  Ensure the organization's physical structures and contents for less than one hundred percent of scheduled value against theft, fire and casualty losses or insure against liability losses to Councilmembers, staff, volunteers and the organization itself for less than the average for comparable organizations.

2.  Allow personnel unauthorized access to City funds.

3.  Knowingly subject facilities and equipment to improper wear and tear or insufficient maintenance without first bringing the issues to the City Council's attention.

4.  Unnecessarily expose the organization, its City Council or staff to claims of liability.

5.  Receive, process or disburse funds under controls that are insufficient to meet the City Council-appointed auditor's standards.

6.  Make any purchase that violates the City's Purchasing Policy or Financial Governance Policies.

7.  Allow property, information and files to be unprotected from loss or significant damage.

8.  Make any investment that is not in compliance with the City's Investment Policy.

### Sec. 4-270.    Emergency City Manager Succession

In order to protect the City Council from sudden loss of City Manager services, the City Manager shall not permit there to be less than one other person familiar enough with City Council and City Manager issues and procedures to be able to maintain organization services.

### Sec. 4-280.    Compensation and Benefits

With respect to employment, compensation and benefits to employees, consultants, contract workers and volunteers, the City Manager shall not cause or allow jeopardy to fiscal integrity or public image.

The City Manager will not:

1.  Change the City Manager's own compensation and benefits, except as those benefits are consistent with a package for all other employees.

2.  Promise or imply permanent or guaranteed employment.

3.  Establish current compensation and benefits that deviate materially from the geographic or professional market for the skills employed.

EXHIBIT 1

4. Create obligations over a longer term than revenues can be safely projected.

5. Establish or change pension or retirement benefits so as to cause unpredictable or inequitable situations, including those that:

   a) Incur unfunded liabilities;

   b) Provide less than some basic level of benefits to all full-time employees, though differential benefits to encourage longevity are not prohibited;

   c) Allow any employee to lose benefits already accrued from any foregoing plan; and

   d) Treat the City Manager differently from other key employees.

### Sec. 4-290.   *Communication and Support to the City Council*

The City Manager shall not cause or allow the City Council to be uninformed or unsupported in its work.

The City Manager will not:

1. Let the City Council be unaware of any significant incidental information it requires including anticipated adverse media coverage, threatened or pending lawsuits, and material internal and external changes.

2. Allow the City Council to be unaware that, in the City Manager's opinion, the City Council is not in compliance with its own policies, particularly in the case of City Council behavior which is detrimental to the work relationship between the City Council and the City Manager.

3. Allow the City Council to be without decision information required periodically by the City Council or let the council be unaware of relevant trends.

4. Present information in unnecessarily complex or lengthy form or in a form that fails to differentiate among information of three types: monitoring, decision preparation, and other.

5. Allow the City Council to be without a workable mechanism for City Council, officer, or committee communications.

6. Deal with the Council in a way that favors or privileges certain Councilmembers over others, except when (a) fulfilling individual requests for information, which will be provided to all City Councilmembers; or (b) responding to officers or committees duly charged by the Council.

7. Allow the City Council to be unaware of any actual or anticipated noncompliance with any City Council Executive Limitations.

8. Endanger the City's public image, credibility, or its ability to accomplish its established goals.

EXHIBIT 1

## DIVISION 5.  COMMUNICATIONS

### Sec. 5-10.    Purpose

Since government is only successful when the citizens are kept informed and educated about the issues facing their municipality, it is necessary that the media play a role in the governmental process. It is through an informed public that progress is ensured and good government remains sensitive to its constituents. These guidelines are designed to help ensure fair relationships with all media reporters. The City Council and the City Manager recognize that the media provides an important link between the City Council and the public. It is desired to establish a professional working relationship to help maintain a well-informed and educated citizenry.

Furthermore, although traditional media continues to play an important role in distributing information, social media and other City managed web-based technologies make information increasingly available to the public in real time and in its entirety. All avenues of communicating information are important and have a meaningful impact on city government.

### Sec. 5-20.    General Provisions

(a)    City staff will make all meeting notices, agendas, minutes, and supporting documentation available to the City Council and to the public via the City's official website.  If supporting documentation is not available to the City Council in advance of a workshop meeting, at City Council's discretion the Council will be given two workshop sessions to discuss the item before it moves to a business meeting for action.

(b)    City Council meetings will be live streamed and archived in their entirety and made available to the public via the City's official website.

### Sec. 5-30.    Media

(a)    Media shall be welcome to attend all public meetings of the City Council.

(b)    Media may be asked to occupy a designated area in some circumstances but may generally locate in places open to the public.

(c)    Media may not disturb the decorum or professionalism of City Council meetings or work sessions.

(d)    Media may contact the Mayor and City Councilmembers directly.

(e)    The Mayor is the primary spokesperson for the City on matters regarding policy decisions or any City Council information pertaining to issues on the agenda. To ensure fair treatment of an issue, any clarifications requested by the media on the issue should be addressed after the meeting. When opposing positions have been debated, regardless of the outcome, the public is better informed when all sides have adequate coverage by the media. This lets the public know the item was seriously debated and options discussed before a vote was taken, and helps build confidence in their government. In respect to each City Councilmember and the citizens of the City, the views presented by each City Councilmember should be given equitable representation. Although Councilmembers may express differing ideas, equitable representation helps promote unity of purpose by allowing the public to be informed of each Councilmember's position during his/her term

EXHIBIT 1

of office and not solely during an election campaign.

(f) City Councilmembers may not speak to media or the public on behalf of the body; they may speak only as an individual member.

(g) To preserve the decorum and professionalism of City Council meetings, the media are requested to refrain from talking with other people in the audience and to conduct any interview with the public outside the meeting room while the City Council is in session. Media interviews will not take place in City Council Chambers.

(h) Media wishing to speak to City staff will comply with the Media Policy developed by the City Manager.

### Sec. 5-40.    Social Media

(a) City Councilmembers participating in social media relating to City business shall use their real names.

(b) City Councilmembers will maintain posts to social media sites relating to City business in accordance with records retention law.

(c) City Councilmembers will not participate in online discussions, groups or forums that contain or have the potential to contain a quorum of City Council (walking quorum).

(d) City Councilmembers are encouraged to share information from City social media sites on their own sites.

### Sec. 5-50.    Email

(a) To ensure compliance with the Texas Public Information Act and required retention schedules and to further transparency in the communication and discussion of City business, City Councilmembers will use their official City of Killeen email addresses to conduct City business. If circumstances require a City Councilmember to conduct City business on a non-City email account, he or she shall promptly forward the associated electronic communications to a City email account.

(b) City Councilmembers will not "email all," "copy all," "blind copy all" or "reply all" to emails discussing City business that contain or have the potential to contain a quorum of members.

### Sec. 5-60.    Other

(a) The City of Killeen logo is copyrighted. It may only be used for official City business and may not be used on campaign materials or for personal business.

(b) The Mayor, as the ceremonial head of the City, is the issuer of proclamations, certificates, awards, City coins, etc. on behalf of the City of Killeen. City Councilmembers wishing to bestow such honors shall request the Mayor to issue and present.

(c) The Mayor may sign letters and petitions making requests or stating positions on behalf of the City so long as they do not conflict with a City Council decision or directive.

EXHIBIT 1

(d) Dedication plaques placed on City buildings shall include the names of the Mayors and City Councilmembers who served from the time funding was budgeted for the project through completion.

EXHIBIT 1

## A.  Policy Statement

It is the desire of the Killeen City Council to promote and encourage the highest standard of conduct for elected City officials, and officials appointed to City Boards and Commissions who represent the citizens of Killeen.  The members of the Killeen City Council support the philosophy that elected Officials and appointed Board Members act in a manner that avoids even the appearance of impropriety.

Each elected official or appointed Board Member shall, at a minimum, comply with all State laws and City ordinances and policies regarding ethical behavior.  Elected and appointed officials shall always act in the public interest rather than in the furtherance of self-interest or those of special interest.

The Killeen City Council recognizes that it cannot by policy define ethical behavior, but it expects each elected or appointed official to act conscientiously in public service, recognizing that the public is best served when elected or appointed officials make decisions and act in a manner that promotes confidence by the citizens of Killeen in the process of City Government.

## B.  Guidelines and Procedures

The following provisions apply to members of the City Council and members of any board, commission or committee established pursuant to the Charter or the ordinances of Killeen, by the laws of this state, or by the City Council (hereinafter referred to as "Officials.")

### Sec. 6-10.    Council and Appointed Board Members

Within thirty days of election or appointment to a Board or Commission, or within 30 days of adoption of these Governing Standards and Expectations, each Official shall sign and deliver to the City Secretary:

1. a copy of the Ethics Policy Agreement;
2. a copy of the Standards of Conduct Agreement;
3. a disclosure statement that discloses any real property owned by the Official or a relative within the first degree of consanguinity or affinity within the Killeen city limits or ETJ, and specifies any business interest located within Killeen, or any business interest that may have dealings with the City.  The Official is obligated to update the disclosure as circumstances change.

Within ninety days of election or appointment, each Official shall complete the Open Meetings Act and Public Information Act training sponsored by the Texas Attorney General's Office.

### Sec. 6-20.    Acceptance of Gratuities

No Official shall knowingly solicit or accept, from any source, any gift, favor, service or thing of value, including a promise of future employment, in consideration of having exercised any official power or performing any official duty on behalf of the City.  Acceptance of any gratuities shall be disclosed as required by Chapter 176 of the Texas Local Government Code.

EXHIBIT 1

### Sec. 6-30.    Use of City Facilities, Personnel, Equipment, etc.

No Official shall knowingly use city facilities, personnel, equipment, or supplies, or use any confidential information concerning the property, operations, policies, or affairs of the City, for his or her private, personal and/or political gain.

### Sec. 6-40.    Conduct in Commercial Transactions

No Official shall knowingly be an interested party to any exchange, purchase, or sale of property, goods, or services with the City, or enter into any contract with the City, except in full and impartial compliance with state statutes, city charter, ordinances and applicable regulations and subject to any restrictions of the city charter; provided further that such persons shall receive no favor or special concession or inducement not customarily available and granted by the city in such a transaction; and provided further than any discretion by Officers, in connection with any such transaction, shall be exercised impartially and upon the same standards applied to all citizens of Killeen.

### Sec. 6-50.    Representing Interests Contrary to Those of the City

No Official shall knowingly represent, directly or indirectly, another person or any group or entity, in any action or proceeding against the interests of the City or in any litigation in which the City or any City department, agency, commission or board is a party, or may become a party.

### Sec. 6-60.    Conflicting Interests in Legal Proceedings

No Official shall knowingly represent, directly or indirectly, another person or any group or entity in any action or proceeding in the City's Municipal Court of Record, which was instituted by a City officer or employee in the course of official duties or in any criminal proceeding in which any City officer or employee is a material witness for the prosecution.

### Sec. 6-70.    Disclosure of Personal Financial Interest and Abstention from Voting

If any Officer has a conflict of interest as defined by Chapter 171 of the Texas Local Government Code, he or she shall file the required affidavit and abstain from all participation in the matter, to include leaving the room when possible.  The determination of whether a conflict of interest applies should be construed liberally.  In fact, the Officer is encouraged to consider abstention when the public would likely perceive the circumstances as a conflict of interest.  While it is the Officer's sole responsibility to determine whether a conflict of interest exists, the Officer may discuss the circumstances with the City Attorney or designee to assist in his/her decision-making.  Absent a conflict of interest, the Officer has a duty to vote in every item presented during a meeting.

### Sec. 6-80.    Communications with Applicants or Petitioners

Any City Councilmember communication with an applicant or petitioner (or their agent) outside of a public meeting regarding a matter that will come to the City Council for a decision must be disclosed in writing and provided to the City Secretary prior to City Council discussion or deliberation of the action. Examples include but are not limited to discussion with a property owner regarding his or her rezoning request, or discussion with a vendor prior to bid award.   The City Secretary will provide the statement(s) to the Mayor, who will disclose the communication during the meeting at which the action will be discussed or considered, before any discussion or consideration has occurred.

EXHIBIT 1

Any Planning and Zoning Commissioner communication with an applicant or petitioner (or their agent) outside of a public meeting regarding a matter that will come to the Planning and Zoning Commission for a decision or recommendation must be disclosed in writing and provided to the City Secretary prior to the Commission's discussion or deliberation of the action. The City Secretary will provide the statement(s) to the Commission Chair, who will disclose the communication during the meeting at which the action will be discussed or considered, before any discussion or consideration has occurred.

EXHIBIT 1

## DIVISION 7.  ENFORCEMENT AND ADMINISTRATION

### *Sec. 7-10.     Policy Enforcement*

If a Councilmember believes this policy has been violated, the topic shall be placed on a meeting agenda following the procedure established in section 1-20(b).  If it is a Staff Member who is in violation of this policy, the City Manager will handle the matter in accordance with City policy as he deems appropriate in accordance with personnel policy.

### *Sec. 7-20.     Annual Review and Re-adoption of These Governing Standards and Expectations*

Each June, after the new City Council is elected and seated, the new City Council shall begin review of these Governing Standards and Expectations and should work towards re-adoption of an updated version by the end of July each year.

### *Sec. 7-30.     City Manager and City Attorney Roles Regarding Protocol.*

The City Attorney assists the Mayor as a resource to confer with, and acts as an advisor for interpreting the City Council's adopted Governing Standards and Expectations.  The City Manager, the City Attorney nor any other Staff member is responsible for enforcing these protocols and guidelines.

EXHIBIT 1



CITY OF KILLEEN

# ATTACHMENT A

## **REQUEST TO PLACE ITEM ON THE AGENDA**
(Per Section 1-20 of Governing Standards and Expectations)

Requestor(s): _____

Date: _____

Problem/Issue/Idea Name for Agenda:

_____

_____

_____

_____

Description of Problem/Issue/Idea:

_____

_____

_____

_____

Requested Action:

_____

_____

_____

_____

EXHIBIT 1



CITY OF KILLEEN

ATTACHMENT B
# SUPPORT FOR MAYOR OR COUNCILMEMBER-SPONSORED MEETING
(Per Section 2-60 of Governing Standards and Expectations)

Requestor: _____

Date of Event: _____ Event Start Time: _____ Event End Time: _____

Name of Event: _____

Number of Attendees expected: _____ Is your event open to the public: ☐ Yes ☐ No

Preferred City Facility: ☐ Killeen Community Center  ☐ Lions Club Park Senior Center
☐ Killeen Police Headquarters Community Room
☐ Community room of a Killeen Fire Station
☐ Killeen Civic and Conference Center Boardroom
☐ Killeen Arts and Activity Center

Will you require any audio visual equipment or technical support (please explain):

_____
_____

Will you require attendance of city staff for presentations or other purpose (please explain)?:

_____
_____

Will you require additional set up and/or clean up time?  If so, state move in and move out times:
In: _____  Out: _____

Per calendar year, the Mayor and each Councilmember may hold  up to three (3) Mayor or Councilmember-sponsored meetings that  are supported by city resources in the following manner:

1. The complimentary use of an above listed meeting space if space is available and not otherwise scheduled.
2. The meeting space should be reserved in advance, but no more than two months in advance.
3. Technical support, to the extent it is available at the chosen space, and not otherwise in use.
4. City Staff presentations, scheduled in advance through the City Manager.
5. The meeting will not occur within the six months preceding an election in which the Mayor or a Councilmember is a candidate for re-election so that there can be no allegation that tax-payer dollars are being illegally spent in support of the Mayor or a Councilmember's reelection effort.

_____   _____
Councilmember Signature                         Date

--------------------------------------------------------------------------------------------------------------------------
TO BE COMPLETED BY CITY MANAGER OR DESIGNEE

☐ Approved   ☐ Denied   _____   _____
                                        Signature                                       Date

_____ **37** _____

EXHIBIT 1



# ATTACHMENT C

Reserved.

EXHIBIT 1



CITY OF KILLEEN

# ATTACHMENT D

## CITY OF KILLEEN ETHICS POLICY AGREEMENT

I hereby certify that I have received a copy of and agree to abide by the City of Killeen Ethics Policy.

_____
Council/Board/Commission/Committee Member Signature

_____
Printed Name

_____
Date

EXHIBIT 1



CITY OF KILLEEN

# ATTACHMENT E

## CITY OF KILLEEN STANDARDS OF CONDUCT

I hereby certify that I have received a copy of and agree to abide by the City of Killeen Standards of Conduct.

_____
Board/Commission/Committee Member Signature

_____
Printed Name

_____
Date

EXHIBIT 1



CITY OF KILLEEN

ATTACHMENT F

**AMENDMENT HISTORY**

| Date | Resolution Number |
|---|---|
| January 15, 2019 | 19-008R |
| August 27, 2019 | 19-084R |
| February 9, 2021 | 21-019R |
| September 28, 2021 | 21-122R |
| June 28, 2022 | 22-087R |
| June 27, 2023 | 23-102R |

EXHIBIT 1