UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **JAMES EVERARD,** *et al.* § | |
| *Plaintiffs*, § | |
| § | |
| vs. § | CIVIL ACTION NO. 6:24-cv-342 |
| § | |
| **CITY OF KILLEEN,** *et al.* § | |
| *Defendants* § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiffs, JAMES EVERARD, ANCA NEAGU, MICHAEL FORNINO, MELLISA BROWN, and CAMRON COCHRAN, by and through their attorney, CJ Grisham of Law Offices of CJ Grisham, P.L.L.C., complaining of Defendants DEBBIE NASH-KING, KENT CAGLE, NINA COBB, and ALEX GEARHART, in their official capacities, and respectfully responds to Defendants' Motion under Rule 12(b)(6) to dismiss, and in support would show the following:

### I.
### INITIAL STATEMENT

*"The government being the people's business, it necessarily follows that its operations should be at all times open to the public view. Publicity is therefore as essential to honest administration as freedom of speech is to representative government. Equal rights to all and special privileges to none is the maxim which should control in all departments of government."* – William Jennings Bryan (1914), *"The Royal Art"*

1

COMPLAINT AND DEMAND FOR JURY TRIAL – Everard v. Killeen

## II.
## SUMMARY OF THE RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Defendants are asking this Court to dismiss this case so that they can continue to trample upon the free speech rights of Plaintiffs unchallenged. Defendants have created and enforce not only an unconstitutional policy they call "rules of decorum," but a policy that blatantly violates Texas State Law, specifically the Open Meetings Act. Nowhere in Plaintiffs' complaint do they suggest that a city council meeting is a "wide-open public forum." There is no such thing under modern American jurisprudence.

Accordingly, Defendants' motion to dismiss should be denied and the parties ordered to begin discovery.

## III.
## AUTHORITIES AND ANALYSIS

A. PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR RELIEF.

I. **Prior Restraint**

The U.S. Supreme Court has consistently held that prior restraints on speech are subject to strict scrutiny and are generally disfavored unless they meet specific procedural safeguards and are justified by a compelling government interest.

In *Madison Joint School Dist. v. Wisconsin Employment Relations Comm'n*, the U.S. Supreme Court held that the state could not prohibit teachers, other than union representatives, from speaking on pending collective-bargaining negotiations at public meetings. The Court emphasized that such a prohibition was an unjustified curtailment of free speech, as the teacher addressed the board as a concerned citizen and employee, and

it was improper to discriminate between speakers based on their employment or speech content.[1]

"Commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment."[2]  For First Amendment purposes, "the existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue."[3]  The Supreme Court has adopted a tripartite forum-based framework to analyze First Amendment issues involving governmentally owned property. "The Court [has] identified three types of forums: the traditional public forum, the public forum created by governmental designation, and the nonpublic forum."[4]

"A public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects."[5]  The state's power "to restrict speakers' access to this category of public forum is subject to the same first amendment constraints that apply to traditional public forums."[6]

---

[1] *Madison Joint Sch. Dist. v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 97 S. Ct. 421 (1976).
[2] *Martin v. City of Struthers*, 319 U.S. 141, 143, 87 L. Ed. 1313, 63 S. Ct. 862 (1943).
[3] *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983).
[4] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802, 87 L. Ed. 2d 567, 105 S. Ct. 3439 (1985).
[5] *Id.* at 802 (reasoning that a designated public forum exists when the government "intentionally opens a nontraditional public forum for public discourse"); see also *Perry*, 460 U.S. at 45.
[6] *Estiverne v. La. State Bar Ass'n*, 863 F.2d 371, 376 (5th Cir. 1989); see also *Perry*, 460 U.S. at 45 ("The Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place.").

The Supreme Court has recently used the term "limited public forum" to describe forums opened for public expression of particular kinds or by particular groups.[7] When a public body establishes a limited public forum of this sort as Defendants have here, that body may restrict the expression that takes place within the forum so long as the restriction (1) does "not discriminate against speech on the basis of viewpoint" and (2) is "reasonable in light of the purpose served by the forum."[8] the Supreme Court now clearly distinguishes designated public forums as being subject to strict scrutiny when determining whether the First Amendment is implicated. The government creates a designated public forum "only by intentionally opening a nontraditional forum for public discourse."[9]

Here the City of Killeen and the other defendants include an agenda item that include "public comments" on items that are on the agenda as required by Texas law.[10] Defendants argue that Plaintiffs do not allege any prior restraint, but the complaint clearly states that Plaintiffs have been cut off PRIOR TO speaking because they have subjectively deemed that the speech didn't "stay on the agenda." However, the Tex. Gov. Code specifically allows members of the public to inquire "about a subject for which

---

[7] *Good News Club v. Milford Central School*, 533 U.S. 98, 121 S. Ct. 2093, 2100, 150 L. Ed. 2d 151 (2001) (treating school facilities opened by a school district for a wide, but not unlimited, range of public expressive activities as a "limited public forum," based on agreement by the parties); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 at 829, 115 S. Ct. 2510 at 2516-17, 132 L. Ed. 2d 700 (describing campus facilities opened to various student groups as a "limited" forum).
[8] *Id*.
[9] *Cornelius*, 473 U.S. at 805, 105 S. Ct. at 3449; see also *Hays County Guardian v. Supple*, 969 F.2d 111, 116 (5th Cir. 1992) (looking "to whether the government was motivated by 'an affirmative desire,' or 'express policy' of allowing public discourse on the property in question.").
[10] Tex. Gov. Code Section 551.007.

COMPLAINT AND DEMAND FOR JURY TRIAL – Everard v. Killeen

notice has not been given."[11]  In other words, subjects which are off agenda.  However, the issue here isn't about whether Plaintiffs were even off agenda – they weren't.  The issue before the Court today is that Defendants immediately shut down speech they subjectively determine is not on agenda, especially when that speech is critical.

Defendants' motion to dismiss invokes case law that is inapplicable to Texas to make the argument that "personal attacks on City officials" is somehow against the "significant government interest in conducting orderly, efficient meetings."[12]  However, the City Council allots four minutes for each member of the public who desires to speak to the Council to speak their mind on an agenda item.  There is nothing disorderly or inefficient about citizens using that time as they see fit.  State law specifically restricts the ability of a government body to "prohibit public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service."[13]

The evidence will show in this case that Defendants frequently proclaim publicly that they aren't going to allow what they consider to be "personal attacks," but which are instead public criticism that Defendants want to hide from the public via silencing their critics.  Defendants' own exhibit lays out in clear terms the way it engages in prior restraint to silence critics.

On page 3 of Defense Exhibit 1, Section 1-50, subparagraph 8. gives the City Council the ability to time by a majority vote.  These extensions are freely given to those who speak glowingly, approvingly, and uncritically about the City Council, but when

---

[11] Tex. Gov. Code 551.042(a).
[12] See Defendants' Motion to Dismiss, page 3.
[13] Tex. Gov. Code 551.007(e).

Plaintiffs request additional time, Defendants do not extend their time, or only do so in rare circumstances. Section 1-80. *Decorum* of Defendants' Exhibit 1 clearly states that Councilmembers "shall not interrupt or delay proceedings," but as alleged in the complaint, do so frequently based on whether or not the speaker is supportive or critical. The evidence will show that many people who would otherwise attend City Council meetings to speak, refrain from doing so because they know that the City Council will simply silence them or accuse them of being "off topic." If this is not prior restraint, there is no such thing.

As Defendants note in their Motion, "even content-based restriction are allowed so long as they are viewpoint neutral and are reasonably designed to confine the forum to the limited and legitimate purposes for which it was created."[14] However, here the Defendants are not restricting speech in a viewpoint neutral manner. If a citizen is critical of the Defendants, she gets shut down. If the citizen is lauding the Defendants, they glowingly give rapt attention and deference to her.

Just because Defendants claim that their Governing Standards and Expectations don't contain "any impermissible viewpoint or content restrictions", the evidence will show that the reality during City Council meetings is quite the opposite. Defendants hide behind the veil of "stay on the agenda" to justify shutting down speech that is critical AND on the agenda. What Defendants' actions mean by "stay on the agenda" is: "talk about the agenda only in a way in which I approve and isn't critical."

---

[14] Defendants Motion to Dismiss, page 4.

Finally, Defendants state that "the City does not have to allow to person to engage in [speech that criticizes the mayor, the council, or city officials." Texas law says otherwise. There is nothing "viewpoint neutral" about preventing speech that is critical of "the mayor, the council, or city officials." It's the very purpose of free speech and seeking redress. The City can point to no case law within the 5th Circuit suggesting otherwise and instead relies on decisions from other districts.

## II.    Plaintiffs Have Nothing But a Plausible First Amendment Retaliation Claims

Plaintiffs are required to prove that 1) they were engaged in constitutionally protected activity, 2) the Defendants caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and 3) the Defendants' adverse actions were substantially motivated against the Plaintiffs' exercise of constitutionally protected conduct.[15]

There is no question that the right to seek redress of government officials is a constitutionally protected activity. The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression. In *United States v. Cruikshank*, the Court declared that this right is implicit in "[the] very idea of government, republican in form."[16] And James Madison made clear in the congressional debate on the proposed amendment that

---

[15]  *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).
[16] *United States v. Cruikshank*, 92 U.S. 542, 552 (1876).

7

COMPLAINT AND DEMAND FOR JURY TRIAL – Everard v. Killeen

people "may communicate their will" through direct petitions to the legislature and government officials.[17]

The historical roots of the Petition Clause long antedate the Constitution. In 1689, the Bill of Rights exacted of William and Mary stated: "[It] is the Right of the Subjects to petition the King."[18] This idea reappeared in the Colonies when the Stamp Act Congress of 1765 included a right to petition the King and Parliament in its Declaration of Rights and Grievances.[19] And the Declarations of Rights enacted by many state conventions contained a right to petition for redress of grievances.[20]

The Petition Clause was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble.[21] These First Amendment rights are inseparable, and there is no sound basis for granting greater constitutional protection to statements made in a petition to government officials than other First Amendment expressions.[22]

When Plaintiffs sign up to speak on an agenda item, they are exercising this right – though limited through Council's desire to force the public to only speak on matters that it deems is a matter of public interest – to seek redress and "communicate their will" to Defendants. For Defendants, as people sworn to uphold the Constitution which includes the First Amendment, to suggest that there are no First Amendment implications to

---

[17] 1 Annals of Cong. 738 (1789).
[18] 1 Wm. & Mary, Sess. 2, ch. 2.
[19] See 1 B. Schwartz, The Bill of Rights -- A Documentary History 198 (1971).
[20] See, e. g., Pennsylvania Declaration of Rights (1776).
[21] See *Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217, 222 (1967).
[22] *Thomas v. Collins*, 323 U.S. 516, 530 (1945)

COMPLAINT AND DEMAND FOR JURY TRIAL – Everard v. Killeen

Plaintiffs' complaint is laughable at best and nefariously suspect as to their qualifications to hold office at worst.

The Complaint is clear that when Plaintiffs express themselves in a way that Defendants do not approve of, they are shut down, ordered to be quiet, and threatened with or actually arrested. Defendants retaliate against their speech by "trespassing" them from the meetings under threat of incarceration and violence.

The "injury" that Defendants are oddly blind to is the loss of First Amendment rights. "Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty."[23] Can there be any greater damage than the loss of God-given, constitutionally protected rights? Even death would be less painless that such damages.

### III.   Plaintiffs Have Plausible Due Process Claims

Defendants seek to have their cake and eat it too with the suggestion that Plaintiffs have no plausible due process claims. In the previous section, Plaintiffs explained why Defendants were wrong that there are no First Amendment claims. However, in arguing that there are no due process claims, Defendants rely on the fact that Plaintiffs are alleging a "right to engage in speech…which is protected by the First Amendment."[24]

---

[23] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971). See also *Nixon v. Condon*, 286 U.S. 73 (1932); *Nixon v. Herndon*, 273 U.S. 536, 540 (1927); *Swafford v. Templeton*, 185 U.S. 487 (1902); *Wiley v. Sinkler*, 179 U.S. 58 (1900); J. Landynski, Search and Seizure and the Supreme Court 28 et seq. (1966); N. Lasson, History and Development of the Fourth Amendment to the United States Constitution 43 et seq. (1937); Katz, The Jurisprudence of Remedies: Constitutional Legality and the Law of Torts in Bell v. Hood, 117 U. Pa. L. Rev. 1, 8-33 (1968); cf. *West v. Cabell*, 153 U.S. 78 (1894); *Lammon v. Feusier*, 111 U.S. 17 (1884).
[24] Defendants' Motion to Dismiss, page 11.

Nothing more needs to be countered in this argument because Defendants defeat their own Defense making it.

### IV.     Declaratory Relief is Proper

Defendants continue as of this writing to continue interrupting Plaintiffs' speech on agenda items and continue to subjectively rule that their speech is "not on the agenda" when the opinions expressed as to Plaintiffs' motives for opposing or supporting an agenda are critical of Defendants, specifically Defendant Nash-King.

For example, during the September 3, 2024, City Council meeting, Plaintiff Fornino attempted to explain why he was opposed to the travel budget that included money for a trip to the national Association of the United States Army conference in Washington, D.C.  Plaintiff Fornino was explaining that his opposition to the budget was because of what he perceived to be a mischaracterization of Defendant Nash-King's military service.  Defendant Nash-King has publicly stated that she was discharged from the Army following a deployment to Kuwait in the wake of Operation Desert Shield/Desert Storm.

Defendant Fornino believed that Defendant Nash-King should not be representing the city at a veterans function when she, in his opinion, lied about her military service. However, when Defendant Fornino attempted to explain that he had her military records and unit history that suggested she never deployed to Kuwait, Defendant Nash-King stopped his time and forced him to shut up because she didn't want to be criticized.

The subjective excuse of being "off the agenda" is frequently used and will continue to be used without declaratory relief that Plaintiffs have a right to express their

support or opposition to an agenda in any manner in which they see fit and that Defendants cannot dictate how Plaintiffs are to think or speak on agenda items.

The standard for declaratory relief involves several key considerations. "The Supreme Court directs that the dispute must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character."[25] Further, the Supreme Court has "repeatedly held that an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation."[26]

District courts engage in a three-step analysis when determining whether a declaratory judgment action should proceed.[27] "First, the court must determine whether the declaratory action is justiciable."[28] "Second, if it has jurisdiction, then the district court must resolve whether it has the 'authority' to grant declaratory relief in the case presented."[29] "Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action."[30] This third step is reviewed for abuse of discretion.[31]

Here, the first step is met because the question is whether an "actual controversy" exists between the parties in the action.[32] As shown in the complaint and Motion to Dismiss, there is a disagreement as to whether speech that is being censored is protected

---

[25] *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).
[26] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 133 S.Ct. 721, 726, 184 L. Ed. 2d 553 (2013) (quotations omitted).
[27] *Orix Credit All., Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir. 2000).
[28] *Id*. (citation omitted).
[29] *Id*. (citation omitted).
[30] *Id*. (citation omitted).
[31] *Id.*
[32] See *Rowan Co., Inc. v. Griffin*, 876 F.2d 26, 27-28 (5th Cir. 1989).

speech. The declaratory judgment sought by Plaintiffs is not abstract or hypothetical, but real.[33] However, the fact that the filing of the lawsuit is contingent upon certain factors would not defeat jurisdiction over a declaratory judgment action.[34] There is a claimed continuing violation of the law, so declaratory relief proper.[35]

### V. Plaintiffs Have Pled a Plausible Basis for Monell Liability

The policy, as admitted to by Defendants, is contained in the City's "Governing Standards and Expectations" document. As already flushed out, the document is the policy by which Defendants believe they have authority to shut down content-based speech on a discriminatory basis. The policy itself violates the Open Meetings Act and Tex. Loc. Gov. Code § 51.002.[36]

A municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation.[37] As Justice Brennan's opinion in *Pembaur v. Cincinnati*, 475 U.S. 469, 483-484 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Plaintiffs have alleged, and Defendants have confirmed through their exhibits, that all Defendants, including the

---

[33] See *United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir. 2000) (holding that a declaratory judgment action is premature where a controversy is "abstract or hypothetical").
[34] See *Assoc'd Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992); 10B Charles A. Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2757, at 476 (1984) ("It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real.").
[35] *Green v. Mansour*, 474 U.S. 64, 71-73 (1985).
[36] Tex. Loc. Gov. Code § 51.002: ORDINANCE OR RULES INCONSISTENT WITH STATE LAW PROHIBITED. Notwithstanding Section 51.001, the governing body of a municipality may adopt, enforce, or maintain an ordinance or rule only if the ordinance or rule is consistent with the laws of this state.
[37] *County v. Dodson*, 454 U.S. 312, 326 (1981),

12

COMPLAINT AND DEMAND FOR JURY TRIAL – Everard v. Killeen

City of Killeen through its published policies, customs, and practices during city council meetings, are liable under *Monell*. Defendant Nash-King and the rest of the City Council are the final policymakers who implement those policies and they have done so with deliberate difference to Plaintiffs as the moving force behind violating their constitutionally protected rights.[38]

## CONCLUSION

Because Plaintiffs have provided ample plausible claims on which relief can be granted and have substantially pled facts to show that their constitutionally protected rights have been violated, that declaratory relief is proper in this case, and that it has overcome the burdens of proving *Monell* liability, the Court should deny Defendants' Motion to Dismiss under the Fed. R. Civ. P. 12(b)(6) and order that the parties immediately begin discovery.

Respectfully Submitted,

LAW OFFICES OF CJ GRISHAM PLLC

**CJ GRISHAM**
Texas State Bar No. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Ste 103-101
Temple, Texas 76502
Telephone: 254-405-1726
**COUNSEL FOR PLAINTIFFS**

---

[38] See *City of Canton v. Harris*, 489 U.S. 378, 385 (1988).